MURRAY, Appellant,

v.

BANK ONE et al., Appellees.

[Cite as *Murray v. Bank One* (1994), 99 Ohio App.3d 89.]

Court of Appeals of Ohio,
Franklin County.

No. 93APE11–1619.

Decided Dec. 13, 1994.

90

*Ray & Todaro Co., L.P.A.,* and *Frank A. Ray;* and *Andrea R. Yagoda,* for appellant.

*Porter, Wright, Morris & Arthur, Edwin M. Baranowski, Randall W. Knutti* and *Laurie N. Jacques,* for appellees.

EDWARD J. MAHONEY, Judge.

The present appeal is before this court for the second time. In this appeal, as in the first appeal, appellant, Joseph C. Murray, appeals the decision of the Franklin County Court of Common Pleas granting summary judgment to appellees, Bank One and Dean Witter Reynolds.[1] Appellant asserts the following assignment of error:

"The trial court erred in granting summary judgment."

Appellant developed a system which permits check writers and credit card users to keep detailed analyses of their expenditures. The individual system user preselects accounting or bookkeeping categories and each category is assigned a representative number or letter. Then each time the user writes a check or uses the credit card, he or she indicates on the check or credit card form under which of the preselected categories the transaction falls. A computer program is used to process the checks and credit card charges and generates a monthly statement which provides a detailed account of each transaction. The statement identifies

---

1. Dean Witter Reynolds was dismissed from this action on June 30, 1993.

to whom the money was paid and the expense category, and sets forth subtotals for each category. The information provided on the monthly statement serves as an accounting record for cash flow, a budgeting document, and an expense analysis report which identifies the nature and purpose of the expenditures. Appellant avers that he spent considerable time, energy, and money developing this system.

In 1977, appellant approached appellee, Bank One, Columbus, N.A. ("Bank One"), and offered to sell his system. Appellant met with representatives of Bank One at various times between 1977 and 1982, and allegedly disclosed in confidence all aspects of his system to them.

Bank One never contacted appellant about purchasing his system. In May 1982, appellant learned that Dean Witter was offering a service known as the "Expense Analyzer," which was quite similar to appellant's system. Appellant also learned that Bank One had suggested the idea for the Expense Analyzer to Dean Witter.

Appellant brought suit against Bank One and Dean Witter alleging misappropriation of appellant's trade secret, unjust enrichment, breach of implied contract, and breach of fiduciary duty. Bank One and Dean Witter moved for summary judgment and the trial court granted their motion. Appellant appealed that ruling to this court.

The premise of the summary judgment motion had been that appellant's system lacked sufficient novelty to be a trade secret and that this was fatal to all of appellant's claims. Relying on *Dann v. Johnston* (1976), 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692, the trial court concluded that appellant's system was neither novel nor original and that his trade secret claim must necessarily fail. This court noted that *Dann* was a patent case and we held that the finding in *Dann* did not necessarily doom a trade secret claim under Ohio law even if it concerned a system identical to that in *Dann. Murray v. Bank One, Columbus, N.A.* (1990), 64 Ohio App.3d 784, 792, 582 N.E.2d 1124, 1129 *("Murray I")*. This court also held that a material issue of fact existed as to whether appellant's system was substantially similar to the system discussed in *Dann. Id.* Accordingly, in *Murray I,* this court held that there was a question of fact with respect to appellant's trade secret claim and sustained the assignments of error which involved the issue of novelty (the assignments of error regarding appellant's claims for relief in contract, *quasi* contract, and tort for breach of fiduciary duty). This court also held that appellant's claims for relief in contract or *quasi* contract for the value of the benefit conferred upon appellees by a misappropriation of his system were contingent upon appellant having a property interest in his system sufficient to sustain a claim for misappropriation of a trade secret. However, this court added that if appellant were seeking relief in contract or *quasi* contract

based solely on the value of his services and the resulting benefit to appellees, such claims were not dependent upon appellant having a property interest in his system sufficient to warrant trade secret status. *Id.*

Appellees filed a renewed summary judgment motion setting forth two basic arguments responsive to *Murray I.* Appellees asserted that appellant's system was not novel and averred that the Expense Analyzer used elements of preexisting systems known and used in the banking industry and that it did not use elements of the Murray system. Appellee's second basic assertion was that appellant had not provided any services to appellees which decreased the cost of developing the Expense Analyzer; in other words, appellant had not conveyed anything of beneficial value to appellees.

To support their renewed motion for summary judgment, appellees produced affidavits, pleadings, case law, answers to interrogatories, and documentary evidence such as newspaper and magazine clippings, letters, intra-office memos, monthly reports, brochures, information on and examples of similar systems, and copyright documents appellant submitted to the Copyright Office of the United States. Some of the evidence which appellees submitted in support of the renewed summary judgment motion had also accompanied the first summary judgment motion. However, a significant amount of evidence was submitted for the first time on the renewed motion, including all of the affidavits, and several articles from various publications.

The trial court found that appellees had established that the check coding system of the Expense Analyzer was not modeled after appellant's system, that the system which the Expense Analyzer used was well known in the industry years before appellant approached Bank One with his idea, and that the people who developed the Expense Analyzer had never heard of appellant or his system. The court added that the evidence that appellant had submitted in opposition to the renewed summary judgment motion established nothing beyond the fact that appellant had not obtained any assurance of confidentiality. The court also found that specific facts in support of the claim that appellant's claim was novel had not been properly established. The court stated that appellant had introduced no proper evidence under Civ.R. 56 to support his *quantum meruit* claim that Bank One had benefited from appellant's services. Accordingly, the court granted the renewed summary judgment motion.

Appellant presents three arguments to support his assignment of error. First, appellant asserts that Loc.R. 57 is improper and denied appellant the opportunity to respond to evidence that appellee filed on the deadline date for filing summary judgment material. Second, appellant asserts that Bank One did not sustain its burden of proof. Third, appellant asserts that the summary judgment was awarded prematurely.

■ Pertinent to appellant's first argument is Loc.R. 57.02, which provides that:

"All affidavits, depositions, and other evidentiary material permitted by Civ.R. 56(C) in support of or in opposition to the motion for summary judgment shall be filed prior to the day set for the non-oral hearing on the motion.  * * * "

On February 11, 1993, the trial court issued a "Schedule Reassignment Order" which provided that the defendant needed to file a summary judgment motion by March 1, 1993, that the plaintiff needed to reply by March 15, 1993, and that all parties needed to submit all Civ.R. 56 materials by March 31, 1993.  The order further provided that the decision would be rendered no later than May 31, 1993.

On March 30, 1993, per an agreed amended entry, plaintiff's response time to the summary judgment motion was extended to March 31, 1993, and the time for defendants to file a reply was extended to April 12, 1993.  A nonoral hearing on the motion was set for April 13, 1993.

On March 31, 1993, appellees filed three affidavits plus attached exhibits in support of their renewed motion for summary judgment which they had filed March 1, 1993.

■ The intent of Civ.R. 56 would be subverted if the party opposing a summary judgment motion were not given time to respond to evidentiary material filed by the moving party.  See *Wise v. Ohio Dept. of Rehab. & Corr.* (1992), 84 Ohio App.3d 11, 616 N.E.2d 251.  (The trial court should allow a reasonable amount of time to respond to a cross-motion for summary judgment filed three days before a hearing on motion for summary judgment.  Both parties should have the opportunity to brief a summary judgment motion in light of the evidence presented by the opposing party.)  However, Loc.R. 57.02 did not deny appellant the opportunity to respond to the evidence which appellees filed on March 31, 1993.  Pursuant to Loc.R. 57.02, appellant had until April 12, 1993 to file Civ.R. 56 material responsive to appellees' supplemental filing.  Yet, appellant did not file any evidence and did not attempt to file a response to the supplemental evidence after March 31, 1993 and before April 13, 1993.  Accordingly, this court finds that appellant was not denied the protections afforded a party opposing summary judgment.

■ Appellant also attacks the summary judgment award on the ground that appellee failed to sustain its burden of proof.  In support of this argument, appellant has challenged the propriety of the evidence which appellees submitted with their renewed summary judgment motion.  We find that appellant has waived any error regarding this information since appellant failed to object to it when it was submitted with the filing of the summary judgment motion.  *Stegaw-*

*ski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 523 N.E.2d 902.

■ Thus, we turn to the merits of this argument. When reviewing a summary judgment motion, the lower court and the appellate court utilize the same standard, *i.e.*, the appellate court independently reviews the judgment and does not defer to the trial court's determination. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411. Summary judgment is appropriate when the following elements have been established: (1) that there is no genuine issue as to any material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. Furthermore, upon a motion for summary judgment, the nonmoving party must produce evidence on any issue for which that party bears the production at trial, and for which the moving party has met its initial burden. See *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 623 N.E.2d 591, and *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

■ Determining whether a trade secret exists entails the consideration of several factors: (1) the extent to which the information is known outside the business; (2) the extent to which the information is known to those inside the business; (3) the precautions taken by the holder of the alleged trade secret to guard its secrecy; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *Pyromatics, Inc. v. Petruziello* (1983), 7 Ohio App.3d 131, 7 OBR 165, 454 N.E.2d 588.

Ohio has adopted the Restatement of Torts definition of trade secrets:

" 'A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of

customers.'" *Kewanee Oil Co. v. Bicron Corp.* (1974), 416 U.S. 470, 474–475, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315, 321–322.

Under Ohio law, while novelty in the patent law sense is not required to establish the existence of a trade secret, some novelty is required "if merely because that which does not possess novelty is usually known; the secrecy, in the context of trade secrets, thus implies at least minimal novelty." *Kewanee, supra,* at 474–475, 94 S.Ct. at 1884, 40 L.Ed.2d at 321–322. See, also, *Murray I.* To amount to a trade secret, the use of an item must be unique and competitively advantageous. If information is generally known in the industry, it is not "secret" and "cannot qualify as a trade secret." *Wiebold Studio, Inc. v. Old World Restorations, Inc.* (1985), 19 Ohio App.3d 246, 19 OBR 398, 484 N.E.2d 280. Damages for a misappropriated trade secret are based upon either profits lost or profits gained. *Id.*

In their renewed summary judgment motion, appellees asserted that the characteristics of the Expense Analyzer which are shared by the Murray system were not novel and therefore no trade secret was present. Appellees identified the characteristics common to the Expense Analyzer and the Murray system to be the existence of a check coding and recording system which permits the user to categorize the expense and which places the burden on the bank to process and provide totals and subtotals. To this limited extent, appellees are correct. There was a system known as the Rec–Check system which was the subject of the Supreme Court case of *Dann v. Johnston, supra,* and there was a checking system known as the Tax Saver which offered such services. However, appellees ignored certain features of the analyzer which the Murray system also has which these other preexisting systems did not have. Specifically, the statements issued by the Expense Analyzer and the Murray system identify the date that the check cleared, the date that the check was written, the check number, the amount of the check, the payee, and the expense category applicable to the check. The other checking systems which appellees have relied on to support their claim that there is no novelty did not include such detailed information on their statements. Rather, their statements only provided the categories and their subtotal and total expenses under these categories.

In support of his novelty argument, appellant points out that his system's statement has both charge card and checking activity on it and identifies the expense category of each charge and check activity. Appellant asserts that appellees' system has a similar feature. Bank One argues that the interrelated checking and charge card statements which the Murray system has is not at issue in the present case because the Expense Analyzer does not offer such a service. Rather, it is the Active Assets Account which provides the use of a charge card

and an interrelated statement. The Expense Analyzer service is part of the Active Assets Account and, according to Bank One, the present case only involves misappropriation of features found in the Expense Analyzer. This court does not find Bank One's position persuasive. In appellant's amended complaint, appellant identified the misappropriated system as one which combined bank checking account services and credit card purchase transactions with a unique computerized accounting system. Despite the fact that the complaint refers only to the Expense Analyzer section of the Active Assets Account, we will not limit appellant's argument to features of the Expense Analyzer. Thus, for purposes of resolving the issue of novelty, the interrelated checking account and charge card transactions statement of the Active Assets Account will be considered.

The element of trade secret which appellees chose to attack on summary judgment was that of novelty. When addressing this question, the focus is on the features which Murray's system and the Expense Analyzer share. Thus, the question becomes whether a system with the following features presents a material issue of fact on the question of whether it is novel: Checks which include a coding and recording system which enables the user to categorize the expense and which places the burden of processing and calculating subtotals and totals on the bank; a monthly statement that identifies the date the check was written, the date the check cleared, the name of the payee, the amount of the check, the expense category of the check, the subtotals and totals of spending under each expense category; and a single monthly statement that shows both checking and charge card activity.

In support of the argument against finding such a system to be novel, Bank One notes that the features common to both systems are not unique. Bank One asserts that preexisting systems offered the expense category feature and a monthly statement with totals and subtotals provided by the bank. Bank One also notes that a standard checking account statement provides detailed information about checks, including the name of the payee. However, Bank One did not establish what information was available in a standard checking account statement in 1982. Bank One did not cite a preexisting system which combined a checking account activity and charge card activity on one statement, because of its position that that feature is not a subject of the present litigation.

Bank One's argument that the features common to the two systems lack the novelty to warrant trade secret status addressed the features separately. Bank One cited systems which predated the Expense Analyzer and Murray's system which had features found in the Expense Analyzer and Murray's system. Bank One did not identify a single preexisting service which offered *all* of the features which the Expense Analyzer and Murray's system share. This court finds that a material issue of fact exists as to whether the *combination* of features shared by

appellant's system and the Expense Analyzer, including some standard common banking features, is sufficiently novel to be eligible for trade secret status. Accordingly, summary judgment on this matter was improper.

The second prong of appellees' attack in their renewed summary judgment motion was that appellant had provided no service which decreased Dean Witter's cost to develop the Expense Analyzer. This issue addressed the *quantum meruit* aspect of appellant's claim which was not dependent upon novelty and trade secret. In *Murray I,* this court found that regardless of whether appellant had a sufficient property interest in his system to qualify for trade secret status, to the extent that appellant provided services or information to appellees which resulted in lowering the development costs for the Expense Analyzer, appellant arguably had a valid claim in contract or *quantum meruit.* Under this theory, the source of the idea for the Expense Analyzer is not at issue. The focus of this cause of action is appellant's work on taking the idea and developing it into a workable system. The question to be answered under this cause of action is whether appellant provided information to appellees which enabled appellees to save steps, time, and money in developing the Expense Analyzer.

Appellees introduced evidence regarding the development of the software for the Expense Analyzer and the work done on researching and determining which budget categories to create. Appellant introduced no evidence in support of the position that he provided information to appellees which permitted them to skip steps in devising a workable system.

In his memorandum opposing the renewed motion for summary judgment, appellant asserts that his idea at a minimum decreased appellees' expense to develop the Expense Analyzer. This argument misses the point since under this theory of a *quantum meruit* claim, the idea is not viewed as novel. Instead, the emphasis is on the actual development of a working system that implements the idea. Appellant needed to argue and produce evidence that he had done work on developing his idea into a viable system and that appellees adopted and used appellant's work product, thereby saving effort, time, and money in developing the Expense Analyzer.

Because we find that appellant failed to produce proper Civ.R. 56 evidence to dispute appellees' argument that appellant had not provided any service which decreased cost to develop the Expense Analyzer, we find that summary judgment on this matter was proper.

Appellant's third argument in support of his assignment of error is that the trial court prematurely granted the summary judgment motion. In support of this argument appellant asserts that the trial court failed to rule on two

motions to compel and a request to supplement the record with evidence in opposition to the pending summary judgment motion which appellant had filed.

Appellant filed the first motion to compel on June 7, 1993; it sought the production of documents relative to costs and profits generated by the Expense Analyzer. Appellant filed the second motion to compel on August 11, 1993; it sought information on the Total Assets Management Account. The second motion to compel was part of a three-branch motion; it also moved for additional discovery time and a reassignment of the scheduled jury trial (then scheduled for November 10, 1993).

It does not appear that appellant's motions to compel discovery were made for the purpose of contesting the summary judgment motion. The language of the motions indicates that they were made in anticipation of being used at trial. Also, the documents which appellant sought in the two motions to compel were not pertinent to the issues raised in the summary judgment motion. The documents would not help prove appellant's claim that his services benefited appellees by reducing appellees' work to develop the Expense Analyzer or appellant's claim that the features of appellant's system which also appear in the Expense Analyzer are novel. Additionally, even if appellant intended to use information which he sought via the motions to compel to oppose the summary judgment motion, he failed to follow the necessary procedures under Civ.R. 56. Specifically, appellant did not file a motion for a continuance pursuant to Civ.R. 56(F). Accordingly, the trial court did not commit prejudicial error when it ruled on the summary judgment motion without ruling on the pending motions to compel.

On August 11, 1993, appellant filed a motion, including an affidavit pursuant to Civ.R. 56(F), asking the court to consider the deposition of John Alexander. Appellant stated that Alexander's deposition had been postponed due to scheduling conflicts and cited Civ.R. 6(B) as authority for the court to enlarge the time for consideration of evidence pertinent to a summary judgment motion. In his second motion to compel appellant also relied on Civ.R. 6(B) to support his request for additional time to pursue discovery that was not foreseeably anticipated until Alexander's deposition.

Civ.R. 56(F) provides that if a party opposing summary judgment submits an affidavit setting forth sufficient reasons why he cannot present by affidavits facts essential to justify his opposition, the court may order a continuance so that affidavits may be obtained, discovery may be had, or any other order as is just may be made. Appellant had not filed a Civ.R. 56(F) motion requesting a continuance before the nonoral hearing date on the summary judgment motion so

that appellant could take John Alexander's deposition. Therefore, Civ.R. 56 was not a valid means by which to get Alexander's deposition into the record.

■ The motion which appellant filed on August 11, 1993 did not request a continuance—it sought permission to supplement the record with evidence beyond the hearing date of the summary judgment motion. When an act was required to be done within a specified time and that time has expired, upon motion, Civ.R. 6(B)(2) gives a court discretionary authority to grant an extension of time when the failure to act was the result of excusable neglect. The affidavit attached to the motion to supplement the record stated that Alexander's deposition had been postponed due to scheduling conflicts. In his May 25, 1984 deposition, John Russell, an officer at Bank One, discussed Alexander and identified him as the person in charge of any service similar to appellant's program that would have been provided to Dean Witter. Yet, the record indicates that appellant did not schedule a notice to depose Alexander until April 22, 1993—beyond the date for submitting evidence on the summary judgment motion. Appellant's motion to supplement the record failed to establish why his failure to depose Alexander earlier or to seek a continuance pursuant to Civ.R. 56(F) before the nonoral hearing date on the summary judgment motion was excusable neglect. Therefore, the trial court did not commit prejudicial error when it ruled on the summary judgment motion without ruling on appellant's motion to supplement the record or his motion for additional time to pursue discovery based upon information learned at Alexander's deposition.

Appellant's assignment of error is sustained in part and overruled in part, the judgment of the trial court is reversed, and this action is remanded for proceedings consistent with this decision. The costs will be shared equally by both parties.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and PETREE, JJ., concur.

EDWARD J. MAHONEY, retired, of the Ninth Appellate District, sitting by assignment.