727 So.2d 363 (1999)
ALL PRO SPORTS CAMP, INC., etc., et al., Appellants,
v.
WALT DISNEY COMPANY, etc., et al., Appellees.
No. 97-1012.
District Court of Appeal of Florida, Fifth District.
February 26, 1999.
*364 Willie E. Gary of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando, P.A., Stuart and Edna L. Caruso and Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellants.
David L. Evans and James R. Lussier of Mateer & Harbert, P.A., Orlando, for Appellees.
THOMPSON, J.
All Pro Sports Camps, Inc., Nicholas Stracick, and Edward Russell (collectively "All Pro") timely appeal a final order dismissing with prejudice all eight counts of their complaint against Walt Disney Company, Walt Disney World Company, Inc., Disney Development Company, and Steve B. Wilson (collectively "Disney"). All Pro argues that the trial court erred when it dismissed their cause of action for failing to state a claim. The basis of the action was whether ideas expressed in a copyrighted business plan and a concept for a multi-sport theme park, which included an architectural model of Sports Island and sketches of certain components of the sports facility, were appropriated by Disney without All Pro's consent and without compensation. Disney argues these same issues were litigated in federal court, and when the court entered a partial summary judgment in their favor as to All Pro's copyright infringement claim, All Pro was estopped from litigating the issues in state court. We reverse as to seven counts of the complaint based on our ruling that the federal judgment did not preclude a separate state lawsuit. All Pro concedes that its claim for civil theft of trade secrets, Count I, was preempted by the partial federal court judgment.
All Pro submitted to Disney a written proposal and business plan for a multi-sport theme park and sports facility. The parties understood that the business plan contained confidential information and trade secrets and was not to be published or released without All Pro's approval. Eventually, the parties developed a concept for a joint venture in which Disney would lease the necessary land to All Pro, develop and build the project, and supply the hotels, transportation, and a golf course. All Pro, in turn, would raise the financing for the development and construction of the facility, and manage and operate it. All Pro then submitted *365 to Disney, under conditions of confidentiality, an architectural model of Sports Island and sketches of certain components of the facility. The parties continued to meet and discuss the financing for development and construction of the facility. All Pro then developed more detailed business plans for Sports Island, utilizing Disney computers, printing facilities, and secretarial staff.
All Pro subsequently learned that Disney was planning to develop its own multi-sport facility using the business plans and architectural materials previously submitted by All Pro to Disney. All Pro alleged that Disney began the actual planning and development of its own sports facility and resort, incorporating elements of education and entertainment derived from All Pro's business plans and architectural materials. All Pro claimed it did not consent to Disney's use of this information without compensation and alleged the business plans are subject to copyright laws.
Based on these allegations, All Pro levied the following claims against Disney: civil theft of trade secrets (Count I); misappropriation of trade secrets (Count II); breach of confidential relationship (Count III); negligent misrepresentation (Count IV); fraud and deceit (Count V); constructive or equitable fraud (Count VI); breach of implied contract (Count VII); civil conspiracy to misappropriate trade secrets (Count VIII). In Counts I and II, All Pro alleged that the business plans, architectural sketches, and model submitted to Disney constituted "valuable trade secrets" which "taught [Disney], both in graphic and conceptual terms, expressions of, and methods of physical integration of, elements of sports, education and entertainment not theretofore known to [Disney] nor otherwise known to the public." Count VIII, civil conspiracy, charged the individual defendants with conspiring to misappropriate the business plans, sketches, and model.
Disney did not answer the complaint, but filed a motion to dismiss asserting that All Pro could not state a claim upon which relief could be granted. Disney argued that a federal lawsuit was previously filed by All Pro against Disney, which included a federal copyright infringement claim and the same claims made in the state case. In the federal case, the district court entered summary judgment for Disney on the copyright infringement claim and dismissed the state law claims without prejudice, declining to exercise supplemental jurisdiction over them. Disney argued that the federal judgment in its favor collaterally estopped All Pro from litigating the same issues in the state action.
All Pro presents three challenges to the dismissal of the complaint. First, All Pro argues that collateral estoppel does not apply because the underlying issue in this litigation, misappropriation of its ideas for a multi-sport facility, was not litigated in the prior federal court proceeding. Second, the state law claims are not preempted by the Federal Copyright Act. Third, whether All Pro's ideas are novel is a question of fact improperly determined on a motion to dismiss.[1]

A. Collateral Estoppel

All Pro argues that collateral estoppel, like res judicata, is an affirmative defense and is improperly raised in a motion to dismiss. Even if properly raised, the central issue in its federal copyright claim was whether the expressions of its ideas for a multi-sports facility, i.e., the business plans and the architectural model and sketches, were infringed upon by Disney. On the other hand, in the state court litigation, the central issue is whether the ideas embodied in those materials were wrongfully used by Disney. All Pro argues that in determining that Disney's site plans and architectural drawings are not substantially similar to those produced by All Pro, the federal court neither explicitly nor implicitly determined any issue related to the original ideas for the facility. Therefore, the federal judgment does not collaterally estop All Pro from asserting claims for the protection of the ideas.
*366 Collateral estoppel prevents relitigation of issues which were actually adjudicated in a prior lawsuit. U.S. Fidelity & Guar. Co. v. Odoms, 444 So.2d 78 (Fla. 5th DCA 1984). It is an affirmative defense which generally must be asserted in an answer, but may be raised initially in a motion to dismiss if a basis for the defense appears in the complaint. See Fla. R. Civ. P. 1.110(d), 1.140(b); Bess v. Eagle Capital, Inc., 704 So.2d 621 (Fla. 4th DCA 1997) (reversing dismissal based on collateral estoppel where complaint did not contain sufficient allegations regarding prior court proceeding to permit proper consideration of defense raised in motion to dismiss); Byrd v. City of Niceville, 541 So.2d 696 (Fla. 1st DCA) (holding dismissal based on collateral estoppel and res judicata procedurally improper where answer had not been filed and complaint did not reflect basis for either defense), rev. denied, 548 So.2d 662 (Fla. 1989).
All Pro's complaint contains no allegations regarding the prior federal lawsuit. However, the trial court took judicial notice of the federal judgment. Res judicata has been held a proper basis for dismissal where, though the defense was not evident from the complaint, the court took judicial notice of the record in prior proceedings. See e.g., City of Clearwater v. U.S. Steel Corp., 469 So.2d 915 (Fla. 2d DCA 1985). Cf. Livingston v. Spires, 481 So.2d 87 (Fla. 1st DCA 1986) (reversing dismissal based on res judicata where complaint did not show applicability of the defense and noting that defendant failed to ask trial court to take judicial notice of prior proceeding). Independent research revealed no case law addressing collateral estoppel in such circumstances, but because the two defenses arise from prior litigation, the holding in U.S. Steel should apply where collateral estoppel is asserted in a motion to dismiss.
Whether the federal judgment has collateral estoppel effect in All Pro's state action depends on whether (1) the issue is identical to the one involved in the federal action, (2) the issue was actually litigated in the prior suit, (3) determination of the issue was a critical and necessary part of the federal judgment, and (4) All Pro had a full and fair opportunity to litigate the issue in the prior suit. Baxas Howell Mobley, Inc. v. BP Oil Co., 630 So.2d 207 (Fla. 3d DCA 1993). All Pro's state complaint alleged that Disney's site plan includes elements, geometric forms, and terminology which are identical to those used by All Pro in its plans for Sports Island. The complaint further alleged that Disney's project is substantially similar in its conceptual expression to All Pro's business plan and architectural materials.
The federal district court expressly determined that the business plans, sketches, and model are expressions of ideas and that those expressions are not substantially similar to Disney's site plans. Consequently, under the federal requirements for collateral estoppel enumerated in BP Oil, All Pro is estopped from relitigating the issue of substantial similarity of expression between its plans, etc., and Disney's project. However, the fact that Disney's visual representations are dissimilar to those produced by All Pro does not estop All Pro from litigating the issue of conceptual similarity. Likewise, All Pro is not estopped from claiming conceptual similarity in hotel accommodations merely because the federal court found that plans for Sports Island combined hotel accommodations with the sports facility, while plans for Disney's sports resort represented a grouping of individuallythemed hotel buildings separate from the International Sports Center.

B. Preemption of State Law Claims

Conceding that the civil theft claim is preempted by the Federal Copyright Act, 17 U.S.C. § 101 et seq., All Pro argues that the remaining state law claims are not preempted. Disney argues that All Pro's complaint is "replete with references" to the copyrighted plans, sketches, and model, and thus, the remaining claims are preempted. Further, as a result of the preemption, the prior federal judgment has a res judicata effect on the state law claims.
The Copyright Act "preempts only those state law rights that `may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided *367 by federal copyright law." Computer Associates Int'l., Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir.1992) (quoting Harper & Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 200 (2d Cir.1983), rev'd on other grounds, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). To escape preemption, a state law claim must require proof of an "extra element" in lieu of or in addition to the acts stated above. Id. "A state law claim is not preempted if the `extra element' changes the `nature of the action so that it is qualitatively different from a copyright infringement claim.'" Id. (quoting Mayer v. Josiah Wedgwood & Sons, Ltd., 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)) (emphasis in original). Under the "extra element" test, state law claims of unfair competition based on trade secrets or breach of confidential relationship and fiduciary duty survive preemption. Id. at 717. See Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1549 (11th Cir.1996) ("We have no doubt that the Florida trade secret statute at issue satisfies the `extra element' test generally employed by courts in performing copyright preemption analysis."). In Garrido v. Burger King Corp., 558 So.2d 79, 82 (Fla. 3d DCA 1990), the only Florida case on this subject, the court held that claims for theft and conversion of ideas do not require proof of elements which are qualitatively different from those required to prove copyright infringement. Thus, such claims are preempted. On the other hand, the court held, claims for breach of implied contract, and fraudulent misrepresentation do require proof of additional elements. Id. at 83.
Applying the holdings in the cases above, All Pro's claims for misappropriation of trade secrets, breach of implied contract, and breach of confidential relationship are not preempted by the Copyright Act. Altai; Bateman. Further, the remaining claims negligent misrepresentation, fraud and deceit, constructive or equitable fraud, civil conspiracy all require proof of "extra elements" in lieu of or in addition to the acts which constitute copyright infringement. Accordingly, they are not preempted by federal copyright law.

C. Novelty of Ideas

All Pro argues that whether its ideas are novel is a question of fact and is therefore an improper basis for dismissal with prejudice. Disney claims that, as a matter of law, All Pro's allegations failed to demonstrate novelty, an element required for all the asserted claims. Disney argues the visual representations of Sports Island and Disney's sports complex, which were judicially noticed, and the "existence of multi-purpose sport complexes," which is "widely-known" and can be judicially noticed, demonstrate the lack of novelty in All Pro's ideas. Therefore, Disney argues, dismissal with prejudice was correct.
In Garrido v. Burger King, supra, the court adopted novelty as an element of state common law claims based on the conveyance of an idea. Garrido, 558 So.2d at 84. See Hudson Hotels Corp. v. Choice Hotels, Int'l, 995 F.2d 1173 (2d Cir.1993). All Pro does not challenge application of the Garrido standard to the common law claims involved in this case. The misappropriation claim, however, is statutory, and Florida's Uniform Trade Secrets Act displaces tort law regarding trade secret misappropriation. § 688.008(1), Fla. Stat. (1993). Section 688.002, Florida Statutes, defines a "trade secret" as:
(4) information, including a formula, pattern, compilation, program, device, method, technique, or process that:
(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
§ 688.002(4), Fla. Stat. (1993). The statute does not address novelty, and no Florida case law compares the statutory language to the novelty requirement.[2]
*368 Whether an idea is novel, or not generally known, is a factual question. See Garrido, 558 So.2d at 84 (stating that novelty issue requires factual inquiries and declining to affirm summary judgment where plaintiff did not have opportunity to rebut claim that ideas were not novel); Weins v. Sporleder, 569 N.W.2d 16, 20 (S.D.1997) (stating that the two subsections in UTSA definition of trade secret involve questions of fact); Amoco Production Co. v. Laird, 622 N.E.2d 912, 916 (Ind.1993) (noting that determination of trade secret is "heavily fact-specific."). But cf. Hudson Hotels, 995 F.2d at 1178 (opining that novelty is mixed question of law and fact).
We hold that the court prematurely determined that All Pro can never state a cause of action. Even if consideration of the documents filed in the federal proceeding were appropriate in this instanceDisney cites no authority to that effect and independent research discovered nonethe color sketches of Sports Island and Disney's sports complex do not show that All Pro's ideas for the facility are not novel. All Pro's complaint alleged that its trade secrets taught Disney "integration of, elements of sport, education and entertainment not theretofore known to [Disney] nor otherwise known to the public." The visual representations show only the placement of buildings and playing fields. Similarly, the asserted widespread existence of multi-purpose sports complexes fails to conclusively demonstrate that All Pro's concept for Sports Island is not novel. Arguably, it is also common knowledge, if not common sense, that all sports complexes are not alike. Thus, the concept behind Sports Island may not, in fact, be "generally known to ... other persons who can obtain economic value from its disclosure or use."
Accordingly, we reverse the order of dismissal as it pertains to Counts II through VIII.
REVERSED as to Counts II through VIII.
W. SHARP, J., concurs.
GRIFFIN, C.J., concurs in part, dissents in part, with opinion.
GRIFFIN, C.J., concurring in part; dissenting in part.
I concur with the analysis of the majority but only as to Counts II and V, which, if better pleaded, could perhaps state causes of action not barred by the prior federal judgment. On the other hand, if no better pleading of facts, rather than mere conclusions, is possible, dismissal of the entire case would eventually be proper. In my view, the other counts assert no cognizable claims in the context of this case, and further pleading would likely serve no purpose.
NOTES
[1] The order of dismissal does not indicate whether the trial court based its decision on collateral estoppel or preemption. The order states only that it appears All Pro "can never state a cause of action upon which relief can be granted based upon these facts."
[2] However, some UTSA cases from other states hold that a trade secret must exhibit some novelty to derive economic value from not being generally known. See e.g., Noah v. Enesco Corp., 911 F.Supp. 299 (N.D.Ill.1995); Leo Publications, Inc. v. Reid, 265 Ga. 561, 458 S.E.2d 651 (1995); Murray v. Bank One, 99 Ohio App.3d 89, 649 N.E.2d 1307 (1994); Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 738 P.2d 665, 674 (1987).