800 So.2d 618 (2001)
Doug PHILLIPS, Edward R. Goff, et al., Appellants,
v.
CORPORATE EXPRESS OFFICE PRODUCTS, INC., Appellee.
No. 5D01-864.
District Court of Appeal of Florida, Fifth District.
August 17, 2001.
Opinion on Denial of Rehearing November 9, 2001.
Alan M. Gerlach, Keith E. Kress and Keith F. White, P.A., of Broad and Cassel, Orlando, for Appellants.
Allan H. Weitzman and Joseph G. Santoro of Proskauer Rose LLP, Boca Raton, for Appellee.
PLEUS, J.
The issue in this case is the enforceability of a non-compete agreement after an asset purchase, stock purchase, merger and name change.
Corporate Express Office Products, Inc. ("Corporate Express"), sells office products, furniture and equipment. It sued three former employees (Goff, Phillips and Farrell) and their new employer, Commercial Design Services, Inc. ("Commercial Design"), for unlawful use of trade secrets and breach of non-compete agreements. Corporate Express sought and obtained a preliminary injunction against the former employees and their new employer. On appeal, the former employees argue that Corporate Express has no legal right to enforce the non-compete agreements. We agree and reverse.
In 1986, Edward Goff signed a noncompete agreement with his employer, Ciera Office Products ("Ciera"). That same year, Doug Phillips signed a similar agreement with his employer, Bishop Office Furniture Co. ("Bishop"). In 1989, Lori *619 Farrell signed her non-compete agreement with Bishop. All of these agreements precluded the employees from competing against their employers or soliciting the employers' customers for one year following the termination of employment. None of the agreements contained assignment clauses.
In 1996, Corporate Express of the South, Inc. ("CES"), purchased the assets of Ciera. As part of the transaction, CES required Ciera's employees to execute consents to the assignment of their non-compete agreements to CES. Goff executed a consent to Ciera's assignment of his noncompete agreement to CES.
In 1997, CES purchased 100% of Bishop's stock. CES did not require Bishop employees to execute consents to assign their non-compete agreements to CES. Accordingly, Phillips and Farrell did not execute consents. CES continued operating Bishop's business under the Bishop name. In 1998, Bishop merged into its parent company, CES. Shortly thereafter, CES merged into its parent company, Corporate Express of the East, Inc. ("CEE"). Five months later, CEE changed its name to Corporate Express Office Products, Inc. ("Corporate Express").
Throughout the asset purchase, stock purchase, mergers and name changes, Goff, Phillips and Farrell remained employed with the corporation that ultimately came to be known as Corporate Express. In 2000, Goff, Phillips and Farrell terminated their employment with Corporate Express and began working for Commercial Design, allegedly in violation of their non-compete agreements.
In Florida, non-compete agreements are considered personal services contracts and are generally not assignable without the parties' consent or ratification. Schweiger v. Hoch, 223 So.2d 557, 558 (Fla. 4th DCA 1969), citing Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 161 So. 284 (Fla.1935). "When a corporation is dissolved and a new one created, the employee's continued employment cannot in and of itself be construed as sufficient knowledge and consent to conclude that the assignment was consented to or ratified by the employee." Schweiger, 223 So.2d at 559; see also, Johnston v. Dockside Fueling of North America, Inc., 658 So.2d 618 (Fla. 3d DCA 1995).
Despite the well-settled law on the issue, the First District, in Sears Termite and Pest Control, Inc. v. Arnold, 745 So.2d 485 (Fla. 1st DCA 1999), held that "a 100% stock purchase does not involve the dissolution of the corporate entity" and thus, the new owner may enforce a non-compete agreement between the corporation and its employee without the necessity of an assignment. The court distinguished Schweiger and Johnston on the grounds that both of those cases involved dissolution of the former entity and creation of a different one. 745 So.2d at 486.
In the instant case, the trial court analyzed these cases as follows:
A change in ownership of corporate stock, such as in a merger, does not affect the corporation's existence, its contract rights, or its liabilities. See Sears Termite and Pest Control v. Arnold, 745 So.2d 485, 486 (Fla. 1st DCA 1999) (citing 18 C.J.S. § 283 Corporations (1990)). See also Stewart v. Preston, 80 Fla. 473, 86 So. 348, 349 (1920) (The change in the name of a corporation has no effect upon its property, rights, or liabilities. The corporation continues as before, and has the right to sue on contracts made to it before the change.). Further, a 100 percent stock purchase does not involve a dissolution of the corporate entity. See Sears Termite, 745 So.2d 485. Therefore, a merger which includes a 100 percent stock *620 purchase does not affect the surviving corporation's right to enforce a non-compete agreement.
Based on Sears Termite, the trial court concluded that Corporate Express had the right to enforce the non-compete agreements.
In Sedgwick of Florida, Inc. v. Lahey, 771 So.2d 1178 (Fla. 5th DCA 2000), this court per curiam affirmed, with citation to Schweiger,[1] a summary judgment in favor of a former employee against the surviving corporation of a merger. Similar to the instant case, the original employer underwent a series of mergers and name changes. The successor corporation sought to enforce a non-compete agreement against the employee, who had remained with the company throughout these changes, but subsequently left to compete against it. The trial court found, citing Strehlow v. Legend Equities Corp., 727 So.2d 1076 (Fla. 4th DCA 1999), Johnston, and Schweiger, that the surviving corporation had "no rights in the contract" since personal services are "not assignable by either party absent express consent." On appeal, the successor corporation relied on Sears Termite. However, this court rejected Sears Termite and followed Schweiger.
We understand how the trial court could be led astray by Sears Termite. We simply do not agree with the rationale of that case. The fact that after the change in ownership or stock sale or name change, liabilities or property rights are not changed, is irrelevant to the issue in this case. Equally irrelevant to our analysis is the fact that one corporation is dissolved and a new entity created.
We focus instead on the reality that Goff, Phillips and Farrell worked for Ciera and Bishop Office Furniture Co. Those companies had a culture and mode of operation unique to themselves. Corporate Express had a culture and mode of operation different from Bishop or Ciera. Both Phillips and Farrell signed non-compete agreements with Bishop, in which Bishop is referred to as "the Employer." Goff's non-compete agreement refers to his employer as "Ciera Office Products, Inc." or "the Employer." There is no language in any of the agreements indicating that the employee is agreeing to be bound to the employers' successors or assigns. Thus, because Corporate Express did not contract with any of the former employees for new non-compete agreements, it cannot be considered "the Employer" that is identified in the agreements and the authorizing statute.
Regardless of the distinction between dissolution and merger, we again reject Sears Termite and agree with the analysis in Schweiger that:
The contract not to compete was for the benefit of the employing firm and when the firm changed it was incumbent upon the new firm to then have a new contract not to compete entered into. Naturally it would be the responsibility of the employee to then sign the contract or the employer could release him. It would not be the duty of the employee, when the firm was changed, to approach the employer and repudiate the contract which he had with the original employer.
223 So.2d at 558.
The court explained the purpose of prohibiting the subsequent employer from enforcing the non-compete agreement, quoting from Smith, Bell & Hauck, Inc. v. Cullins, 123 Vt. 96, 101, 183 A.2d 528, 532 (Vt.1962), as follows:
Knowing the character and personality of his master, the employee might be ready and willing to safeguard the trust *621 which his employer had reposed in him by granting a restrictive covenant against leaving that employment. His confidence in his employer might be such that he could scarcely anticipate any rupture between them. As to that particular employer, if a break did occur, he might be willing to pledge that his fidelity would continue after the employment had ended, even at the cost of forsaking the vocation for which he was best suited. This does not mean that he saw willing to suffer this restraint for the benefit of a stranger to the original undertaking.
223 So.2d at 559.
In the instant case, Corporate Express could have eliminated any doubt as to the enforceability of the non-competes by obtaining consents from the former employees. Phillips testified in his deposition that CES managers repeatedly tried to intimidate him into signing a new non-compete agreement. These actions demonstrate that CES recognized the need to have the continuing employees execute consents to assign their non-compete agreements. However, they failed to obtain these consents.
Although Schweiger involved the dissolution of the former employer, we believe its reasoning also applies to the stock purchase and mergers in the case at bar. To this extent, we recognize that our position conflicts with Sears Termite. Accordingly, we reverse the preliminary injunction. Because of our holding, we do not address the remaining issues.
REVERSED.
THOMPSON, C.J., and PETERSON, J., concur.

ON MOTION FOR REHEARING
PLEUS, J.
Appellants, in a motion for rehearing, ask us to determine whether the trial court improperly set the amount of the injunction bond without an evidentiary hearing and whether an enjoined party can recover damages in excess of the bond amount so set. We decline both invitations.
The principles of judicial economy and ripeness dictate that appellate review of these issues at this time would be premature. If or when any final judgment for damages resulting from the injunction is obtained, and if the damages found to exist are greater than the bond amount, the alleged error involving the setting of the bond amount and the question of such a bond being an upper limit on damages can then be addressed by the trial court. Nothing in this opinion should be construed as an indication of our position on these issues.
The appellees have also filed motions for rehearing and clarification in which they argue that certain portions of the preliminary injunction were not appealed, and therefore, reversal of the preliminary injunction creates doubt as to the enforceability of the unappealed portions.
It was our intent to address only the enforceability of the non-complete agreement. It was not our intent to reverse any portion of the injunction which is unrelated to the non-compete agreement. The trial court may continue the injunction, as it sees appropriate, on the use and disclosure of trade secrets and other confidential and propriety information under the Uniform Trade Secrets Act or specific common law prohibitions.
MOTIONS DENIED.
THOMPSON, C.J., and PETERSON, J., concur.
NOTES
[1] This citation appears in the actual opinion but not in the Southern Reporter. We do not know why the Southern Reporter failed to publish the full opinion.