**ALLEGIANCE HEALTHCARE
CORPORATION, Plaintiff,**

v.

**Jennifer COLEMAN and PSS/World
Medical, Inc., Defendants.**

**No. 02–60599–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Nov. 14, 2002.

Debra M. Lubkin, Muller Mintz, P.A., Miami, FL, W. Irl Reasoner, Kelly Kauffman, Habash, Reasoner & Frazier, Columbus, OH, for Plaintiff.

Joan M. Canny, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, FL, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

MORENO, District Judge.

After Defendant Jennifer Coleman terminated her employment with Plaintiff and began working with Plaintiff's competitor, Defendant PSS/World Medical, Inc., Plaintiff filed a five-count complaint seeking damages based on: (1) breach of contract; (2) promissory estoppel; (3) common law unfair competition; (4) misappropriation of trade secrets; and (5) tortious interference with business relationships. Before the Court is Defendants' motion to dismiss all counts. The motion is GRANTED as to

Plaintiff's claim for unfair competition. The motion is DENIED as to the remaining four counts.

## I. BACKGROUND

Plaintiff, a manufacturer and seller of medical supplies, brought this case seeking to enforce two restrictive covenants designed to prevent Defendant Jennifer Coleman from competing with it after her employment ended. The first covenant signed by Coleman was contained in an Agreement Not to Compete or Solicit Customers of Employer. *See* Compl. Ex. A. The agreement prohibits Coleman from soliciting business from any customer with whom Coleman had contact while employed, and also prohibits Coleman from competing in the sale and distribution of medical and surgical supplies. The agreement also prohibits Coleman from using or disclosing proprietary or confidential knowledge. Coleman's employer at the time of the contract was an entity called Durr Medical Corp. ("Durr"). Plaintiff alleges that it can enforce the agreement as a "successor" to Durr. The Court will refer to this agreement as the "Durr Agreement."

The second covenant was contained in a "Conflict of Interest" agreement. *See* Compl. Ex. B. This agreement prohibits Coleman from soliciting business from customers previously serviced by Coleman for the benefit of competitors. Plaintiff alleges that this agreement applies for twelve months after termination of employment. Coleman's employer at the time of this contract was an entity called Bergen Brunswig Corp. ("Bergen"). However, the agreement explicitly applies to any "subsidiary or affiliated company" of Bergen. Plaintiff again contends that it can enforce the agreement as a "successor" to Bergen. The Court will refer to this agreement as the "Bergen Agreement."

According to the complaint, Coleman resigned her position as an Account Manager on February 18, 2002. Compl. ¶ 3. Shortly thereafter, she began working for Defendant PSS/World Medical, Inc. ("PSS"), which directly competes with Plaintiff. Plaintiff alleges that Coleman has been contacting customers and encouraging them to transfer their business from Plaintiff to PSS. *Id.* at ¶ 14. Plaintiff also contends that Coleman is using the trade secrets and confidential information provided to her by Plaintiff and has obtained an unfair advantage in competition. *Id.* at ¶ 15.

Accordingly, Plaintiff filed this complaint on April 29, 2002, seeking money damages for: (1) breach of contract against Coleman; (2) promissory estoppel against Coleman; (3) unfair competition against Coleman and PSS; (4) misappropriation of trade secrets against Coleman and PSS; and (5) tortious interference against PSS. Coleman and PSS have moved to dismiss each of the counts for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

## II. LEGAL STANDARD

A court will not grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) unless the plaintiff fails to allege any facts that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.,* 795 F.2d 948, 953 (11th Cir.1986). Where, as here, a plaintiff attaches documents as exhibits to the complaint, the court may consider the contents of the exhibits even though they go beyond

the specific allegations of the complaint. Fed R. Civ. P. 10(c).

## III. ANALYSIS

### A. Breach of Contract

Plaintiff alleges that Coleman has breached both the Durr Agreement and the Bergen Agreement. Coleman argues that Plaintiff's breach of contract claims are insufficient as a matter of law. Coleman presents three reasons: (a) Plaintiff has failed to properly allege that it is a successor to Durr and Bergen and thus has no standing to enforce the agreements; (b) even if Plaintiff is a successor to Durr and Bergen, Plaintiff has not alleged that it was assigned the contracts with Coleman's consent, as is required under Florida law; and (c) the Bergen Agreement only applies during employment, not after an employee resigns, and is impermissibly vague because it lacks specific time and geographic limitations.

### (1) Plaintiff's Allegation of Successorship

■ Coleman contends that Plaintiff may not enforce either the Durr Agreement or the Bergen Agreement because Plaintiff was not a party to either agreement. Plaintiff admits that it was not a signatory to either agreement, but has alleged in the complaint that it is the "successor" to both Durr and Bergen Brinswig. Compl. ¶¶ 8–9. According to Coleman, this allegation is insufficient because Plaintiff does not explain *how* it is a successor. *See Harding v. Winn–Dixie Stores, Inc.,* 907 F.Supp. 386, 389 (M.D.Fla.1995) (courts need not accept as true "legal conclusions masquerading as factual conclusions"). Nonetheless, Plaintiff's status as a "successor" is a factual allegation, which Plaintiff may or may not be able to prove. Plaintiff has clearly alleged that its right to enforce the agreements arises from its status as "successor." This allegation is

sufficient for notice pleading under Fed. R.Civ.P. 8.

### (2) Whether the Contracts Needed to be Assigned to Plaintiff in order for Plaintiff to Enforce Them

■ Second, Coleman contends that Plaintiff may not enforce the agreements because Plaintiff was never assigned the right to do so by its predecessors in interest. Under Florida law, contracts for personal services are not assignable unless the contract so provides or unless the other party consents to an assignment or ratifies it afterwards. *Schweiger v. Hoch,* 223 So.2d 557, 558 (Fla. 4th DCA 1969). The Durr Agreement explicitly provides that it inures to the benefit of the parties' successors and assigns. The Bergen Agreement provides that it applies to all "affiliated" corporations. Plaintiff does not allege, however, that there was a separate assignment accompanied by independent consent or ratification.

■ Instead, Plaintiff contends that an assignment was not necessary because Plaintiff acquired the benefits of the contracts through stock purchases of Durr and Bergen. Florida law is unsettled, however, on the issue of whether covenants to compete must be separately assigned with consent upon the employer's merger with another company. In support of its position that a stock purchase automatically transfers the benefit of the covenants to the surviving corporation, Plaintiff cites *Sears Termite & Pest Control, Inc. v. Arnold,* 745 So.2d 485 (Fla. 1st DCA 1999), in which Florida's First District Court of Appeals found that no assignment was necessary where the plaintiff acquired the defendant's former employer through a total stock purchase. The *Sears Termite* court reasoned that a stock acquisition does not affect a corporation's contractual rights and liabilities and, therefore, any

non-compete covenants remained in effect. *Id.* at 486. The court distinguished this situation from one where a corporation is dissolved and a new entity is created. *Id.* Assignments would be necessary in that case. *See Johnston v. Dockside Fueling of N. Am., Inc.,* 658 So.2d 618 (Fla. 3d DCA 1995). A 100 percent stock purchase, on the other hand, does not involve a dissolution of the corporate entity. *Sears Termite,* 745 So.2d at 486.

The Fifth District has flatly disagreed with the rationale of the First District. In *Phillips v. Corporate Express Office Prods., Inc.,* 800 So.2d 618, 620 (Fla. 5th DCA 2001), *rev. gr.,* 821 So.2d 294 (Fla. 2002), the court considered a case where the employees signed non-compete agreements with companies that were subsequently acquired through asset purchases, stock purchases, mergers and name changes. The contracts did not include provisions binding the parties' successors and assigns. The *Phillips* court concluded that the surviving corporation could not enforce the agreements. *Id.* at 621. The court found it irrelevant that the corporation's liabilities and rights were not affected by the ownership change. Instead, the court focused on the "reality" that the employees signed agreements with their current employers, which "had a culture and mode of operation unique to themselves." *Id.* at 620. In light of this practical difference between the employer at the time of the contract and the employer at the time of the alleged breach, the court found it necessary for the new employer to obtain consents from employees in order to enforce the covenants. *Id.*

The Florida Supreme Court has agreed to review the *Phillips* case. *Phillips,* 821 So.2d at 294. Until that court settles the issue, however, this Court must predict what it will do. As for courts in other jurisdictions, the majority have held that the surviving corporation in a merger may enforce covenants not to compete without obtaining assignments. *See, e.g., Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1361 (10th Cir.1990) (applying Kansas law and holding that "[i]n the case of a merger, as here, the surviving corporation automatically succeeds to the rights of the merged corporations to enforce employees' covenants not to compete"); *Standard Reg. Co. v. Cleaver,* 30 F.Supp.2d 1084, 1093 (D.Ind. 1998) (noting that with a valid merger the surviving corporation succeeds to the covenant rights of the merged corporation under Indiana law); *UARCO Inc. v. Lam,* 18 F.Supp.2d 1116, 1122 (D.Haw.1998) (finding under Hawaii law that the plaintiff successor corporation could enforce the competition covenant because "following a merger, the successor corporation possesses all obligations and rights of the predecessor corporation").

After considering the parties' arguments, it is the Court's opinion that Plaintiff's position is more reasonable. The employee enters into an agreement with the corporate entity. When a stock purchase occurs, the entity itself does not necessarily change. Only the ownership (and often the name) is different. The agreement with the entity thus remains in place. In addition, the acquiring company in a merger should be able to rely on the benefits of existing contracts. If employees can make them unenforceable simply by refusing assignments, the acquiring company is left with a less valuable entity than expected.

Moreover, this case can be distinguished from *Phillips.* In *Phillips,* the court noted that the contract lacked a provision notifying the parties that it inured to the benefit of successors and assigns. *Phillips,* 800 So.2d at 620. The court thought it unfair to allow an unforeseen party to enforce the contract against an unsuspecting employee. *Id.* In this case, however, both agreements contained provisions put-

ting the parties on notice that successors and assigns may enforce the covenants. Accordingly, there is nothing unfair about requiring Coleman to honor the covenants despite her employers' mergers with Plaintiff. Therefore, Plaintiff should be permitted to enforce both agreements.

### (3) The Bergen Agreement's Application After Termination

■ Finally, Coleman contends that Plaintiff may not enforce the Bergen Agreement because the Bergen Agreement does not apply to employees following termination of employment, and because the covenant is not reasonably limited in time and area. Coleman interprets the Bergen Agreement to restrict employees from competing with the employer only while the employee is employed. In support, Coleman points to the opening paragraph of the agreement, where it states that "Company policy prohibits any *employee* from engaging in financial participation or outside employment in any activity or business undertaking which is competitive with or prejudicial to the best interest of any phase of the Company's business." (Emphasis added). Compl. Ex. B at 4. However, the agreement also plainly states that "I understand that the obligations which arise thereunder shall continue after the expiration of my employment with the Company." *Id.* at 13. On its face, therefore, the agreement applies post-termination.

Coleman counters that even if it does apply post-termination, the agreement is invalid because it does not specify a time period or geographical limitation. Of course, Plaintiff has alleged in the complaint that the agreement applies for twelve months after termination, and on a 12(b)(6) motion the Court must take the factual allegations as true. Moreover, the Florida Supreme Court has instructed trial courts to supply time and area limitations where none are included in the contract. *Flammer v. Patton*, 245 So.2d 854, 859 (Fla.1971) ("Where no limitations are contained in the restrictions it is within the discretion of the trial court to determine what limitations as to time and area would be reasonable under the circumstances."). Therefore, the lack of time and geographical limitation does not compel dismissal.

### B. Promissory Estoppel

Plaintiff's promissory estoppel claim is also based on Coleman's alleged breach of the Durr Agreement and the Bergen Agreement. Plaintiff alleges that it trained Coleman and provided her with information and trade secrets with the expectation that she would honor the agreements. Plaintiff thus argues that Coleman should be estopped from denying the validity of the agreements because Plaintiff relied upon them and Coleman knew that Plaintiff relied upon them.

Coleman recycles her breach of contract arguments in seeking dismissal of the promissory estoppel claim. Coleman argues that, since the agreements are invalid, Plaintiff cannot obtain relief for reliance upon them. Coleman's arguments thus rise and fall with her breach of contract arguments. As stated above, Plaintiff's allegations are sufficient as to the validity of the agreements. The promissory estoppel claim is therefore sufficient as well.

### C. Misappropriation of Trade Secrets

Plaintiff alleges that Coleman was given trade secrets during her employment that included "customer lists, cost and profit margin information, and marketing and sales practices of Allegiance, as well as customer and buying habits and preferences." Compl. ¶ 36. Plaintiff alleges that Coleman has misappropriated these secrets to her own use and that of her new employer, PSS, and that Plaintiff has been

damaged by this misappropriation. *Id.* at ¶¶ 37–40.

■ Coleman seeks dismissal of this claim because, first, the supposed trade secrets identified by Plaintiff in the complaint do not qualify as trade secrets under Florida's Uniform Trade Secrets Act ("UTSA"). The UTSA defines a trade secret as something that (a) derives independent economic value from not being generally known to the public; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. § 688.002(4), Fla. Stat. (2002); *Am. Red Cross v. Palm Beach Blood Bank, Inc.,* 143 F.3d 1407, 1410 (11th Cir.1998). Whether information is a trade secret is a question of fact. *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1292 (S.D.Fla.2001); *All Pro Sports Camp., Inc. v. Walt Disney Co.,* 727 So.2d 363, 368 (Fla. 5th DCA 1999). Accordingly, on a motion to dismiss, the movant must present "clear authority" that the information that the plaintiff identifies is not protected. *Del Monte,* 136 F.Supp.2d at 1292.

■ Coleman has not revealed such clear authority in this case. Coleman has cited cases holding that certain pricing information, customer lists, and other information compiled by medical equipment salespeople *may* not be protected. *See, e.g., Applied Indus. Materials Corp. v. Brantjes,* 891 F.Supp. 432, 438 (N.D.Ill. 1994) (on a motion for preliminary injunction, the court found that price information was not a trade secret as a matter of fact); *Am. Red Cross,* 143 F.3d at 1410–11 (finding that, after reviewing evidence, it was not clear that donor lists were trade secrets so as to justify a preliminary injunction). However, it is not clear that Plaintiff can establish no facts to support its claim that the information in this case was indeed a trade secret. Dismissal is therefore inappropriate under Fed.R.Civ.P. 12(b)(6).

Likewise, the Court is unpersuaded that dismissal is proper based on Coleman's alternative argument that Plaintiff cannot establish that Coleman has misappropriated any secrets. The complaint plainly alleges that Coleman and PSS have used the information to their benefit and thus have "misappropriated" it. Compl. ¶ 39. The Court has no record against which to test this allegation. As the claim is properly stated, the claim survives at least until such a record exists.

## D. Unfair Competition

■ Coleman argues that Plaintiff's unfair competition claim is barred because it is based on the same allegations as the misappropriation of trade secrets claim. Section 688.008 of the UTSA provides that the UTSA "displace[s] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." § 688.008(1), Fla. Stat. (2002). The UTSA specifies that this preemption does not apply to "[o]ther civil remedies that are not based upon misappropriation of a trade secret." *Id.* at § 688.008(2)(b). Thus, this section apparently preempts all claims based on misappropriation of trade secrets.

In the context of applying the UTSA's preemption provision, *Coulter Corp. v. Leinert,* 869 F.Supp. 732, 734 (E.D.Mo.1994) applied Florida law. In *Coulter,* the court considered the plaintiff's claims for unfair competition and accounting. That court noted the lack of Florida jurisprudence on the statute and interpreted it in light of the plain language. *Id.* After doing so, the court concluded that "the plain language clearly precludes common law claims based on a theory of misappropriation of trade secrets. Thus, the issue becomes whether allegations of trade secret misap-

propriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008." *Id.*

Following this rationale, the Court must consider whether Plaintiff's allegations of unfair competition are distinguishable from the allegations of trade secret misappropriation. After comparing the claims it is clear they are not. Plaintiff's trade secret claim is based on Coleman's and PSS's use of the "trade secrets and/or confidential and proprietary information" that Coleman obtained during her employment. Compl. ¶ 36. The unfair competition claim is also based on Coleman's and PSS's use of the "trade secrets, confidential information, and other information" that she learned while employed by Plaintiff. Compl. ¶ 31. Clearly, then, the allegations are both based on Coleman's and PSS's alleged misuse of certain information that Coleman obtained while Plaintiff's employee. Plaintiff has not identified any material distinction between the wrongdoing alleged in the trade secret claim and that alleged in the unfair competition claim. Accordingly, the unfair competition claim must be dismissed.

## E. Tortious Interference

Finally, Plaintiff alleges that PSS has interfered with Plaintiff's rights with regard to its relationships with Coleman and its customers. To properly allege a claim for tortious interference under Florida law, Plaintiff must allege: (1) the existence of a business relationship under which plaintiff has legal rights; (2) knowledge by the defendant of such a relationship; (3) an intentional and unjustified interference with such a relationship; and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla.1994). Further, the party allegedly interfered with must be actual and identifiable, and not just a large group such as the "community at large." *Id.*

Here, Plaintiff has identified the following business relationships: Plaintiff's employment relationship with Coleman, Plaintiff's business relationship with its customers serviced by Coleman, and Plaintiff's relationship with Coleman under the Durr and Bergen Agreements. Compl. ¶ 45. Plaintiff has also alleged that PSS knew of these relationships and Plaintiff's rights thereunder. *Id.* Plaintiff accuses PSS of aiding Coleman and encouraging Plaintiff's customers to cease their relationships with Plaintiff. These actions, claims Plaintiff, have resulted in damages of lost sales, goodwill, and customers. *Id.* at ¶ 46. Thus, Plaintiff has alleged each of the elements of the claim. Moreover, Plaintiff has limited the parties interfered with to Plaintiff and the customers that Coleman serviced while employed by Plaintiff. This group is sufficiently actual and identifiable at this stage. Accordingly, the motion to dismiss this claim is denied.

## IV. CONCLUSION

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss for Failure to State a Claim for Relief (**D.E. No. 8**), filed on ***June 10, 2002.*** It is

**ADJUDGED** that the motion is GRANTED as to Count Three of Plaintiff's Complaint. However, the motion is DENIED as to Counts One, Two, Four, and Five.