887 So.2d 405 (2004)
Linda MARX, Personal Representative of the Estate of John D. Cole, III, Appellant,
v.
CLEAR CHANNEL BROADCASTING, INC., d/b/a WJNO Radio, Appellee.
No. 4D03-2221.
District Court of Appeal of Florida, Fourth District.
October 13, 2004.
Rehearing Denied December 8, 2004.
Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellant.
Hank Jackson and Joseph J. Ward of Holland & Knight, LLP., West Palm Beach, for appellee.
FARMER, C.J.
This case involves rights and liabilities under an employment contract between a prominent radio personality (Cole) and the corporation then owning the Station (Fairbanks). The agreement barred Cole from competing against the Station for a stated period after employment ended. The agreement also had a clause saying that the rights and liabilities of the parties were not assignable. Fairbanks later sold the Station to another corporation (Clear Channel), which soon terminated Cole's *406 employment. He then sued Clear Channel and alleged that it had unjustifiably interfered with his prospective advantage to work for a different radio station in the community. The trial judge granted a summary judgment, holding that the non-assignability clause was ambiguous and that the non-competition clause justified the employer's interference as a matter of law. Because we do not agree with the legal conclusion that the non-assignability clause is ambiguous, we reverse.
The 1995 agreement was for an initial term of three years, with a provision for annual renewals thereafter. It was in its third annual renewal when Fairbanks sold the Station to Clear Channel. The contract provision as to assignment of contractual rights and obligations stated:
"The provisions of this agreement shall be binding upon and inure to the benefit of the parties hereto, COLE's heirs and personal representatives, and the successors and assigns of [Fairbanks]. The foregoing notwithstanding, however, upon the sale of all or substantially all the assets, business and goodwill of [Fairbanks], or upon the merger or consolidation of the [Fairbanks] with another corporation, the Agreement shall bind and inure to the benefit of COLE. No party, however, may assign its rights or obligations under this Agreement." [e.s.]
Although the first sentence by itself might seem to make some rights under the non-competition clause transferable, the second sentence seems to contradict that interpretation, and the third sentence clearly goes entirely in another direction. In context it is difficult to imagine how the third sentence would have any meaning at all unless it were to categorically eliminate the non-competition clause if the station was sold.
Contractual language must be read to have the plain meaning of the words used. See Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla.1957) (the test of the meaning and intention of the parties is the content of the written document); Estate of Barry, 689 So.2d 1186, 1187 (Fla. 4th DCA 1997) (when terms of agreement are unambiguous, meaning and intent of makers are discerned solely from face of agreement; language used and its plain meaning controls). The general rule as to interpretation of non-competition agreements is that such contracts will not be construed to extend beyond their proper import or further than language of the contract absolutely requires. Zimmer v. Pony Exp. Courier Corp. of Fla., 408 So.2d 595, 597 (Fla. 2d DCA 1981), review denied, 418 So.2d 1280 (Fla.1982).
The introductory adverbial phrase in the second sentence ("the foregoing notwithstanding however") and the use of the qualifying adverb however in the third sentence of the non-assignability provision have the effect of requiring that the three sentences be read sequentially, rather than all at once together. That is, one starts with the first sentence and learns that the agreement binds the heirs and successors of both parties. But the second sentence begins by displacing the first sentence of some effect ("The foregoing notwithstanding however"),[1] referring uniquely to Cole, providing that only he benefits if there is a sale of the station but that he is bound by the agreement. The third sentence then provides rather clearly that no rights under the contract may be assigned.
Looking backward from the third sentence, and giving the text of the full paragraph its due, reading the three sentences sequentially  as they obviously were intended to be  giving the words their plain *407 meaning, the parties obviously meant that no executory benefit under the agreement may be assigned and that only the original parties may enforce any vested benefits due under the agreement. By omitting the seller (and thus, also, the seller's buyer) in explicit benefit in the event of a sale, this second sentence provides that Fairbanks does not continue to benefit from it if the Station is sold to new owners. The third sentence provides categorically that neither one of the parties may transfer contractual rights or delegate contractual duties.
And so the heirs and successors of Cole may enforce only rights arising from performance previously completed and thus entirely vested. That would mean, for example, that Cole's heirs could enforce his right to unpaid salary, or for damages if he had been fired without good cause or for invidious reasons. But the third sentence makes clear that if Fairbanks sells the station to new owners the non-competition clause is personal between Fairbanks and Cole and may not be assigned as part of the sale.
Armed with this understanding of the non-assignability clause, we now determine whether the summary judgment in favor of Clear Channel in Cole's interference with prospective advantage lawsuit may stand up. The issue turns on whether Clear Channel can rely on the contract to show that it acted in good faith.
The new owner rests its assertion of good faith on its lawyer's advice that the non-assignability clause is ambiguous. Clear Channel contends that it can justify interfering with Cole's right to employment by a good faith belief that the contract did not mean what it said. But to do so, Clear Channel would have to reject the plain meaning of the non-assignability clause in the employment agreement. As a general proposition we do not think one may base a defense of good faith to a claim of interfering with prospective advantage on such a circumstance.
The subject of the contractual provision is competition. At one time, both the common and statutory law had a strong preference in favor of competition and against all agreements restraining it. See Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32 (1935) (saying that courts are reluctant to uphold contract whereby individual restricts his right to earn living at his chosen calling); Dunkin v. Barkus & Kronstadt, D.O.'s P.A., 533 So.2d 877 (Fla. 3d DCA 1988) (non-compete contracts and the statute which permits them are in derogation of the common law rule precluding agreements in restraint of trade, any such agreement must be construed strictly against the purported restraint); Frumkes v. Beasley-Reed Broad. of Miami, Inc., 533 So.2d 942 (Fla. 3d DCA 1988) (same).
In the early 1950s the Legislature first adopted statutory authority for the enforcement of non-competition covenants in employment agreements. See Ch. 28048, Laws of Fla. (1953). This legislation allowed employers and employees to enter into non-competition agreements so long as the contracting employer continues in business and the agreement is reasonable as to time and area. § 542.33(2)(a) ("one who is employed... may agree with ... his employer to refrain from carrying on or engaging in a similar business ... within a reasonably limited time and area, so long as ... such employer continues to carry on a like business therein."). As the statute made clear, it is only the original employer who could benefit from the non-competition agreement and then only so long as that employer stays in the same business in the same area. § 542.33(2)(a) ("so long as ... such employer continues to carry on a like business therein").
*408 In 1996, the legislature significantly rewrote the statute, adopting a new provision. See Ch. 96-257, §§ 1, 3, Laws of Fla., and § 542.335, Fla. Stat. (2003). At the same time, it repealed the old section 542.33 as to non-competition agreements made after July 1, 1996, but provided that old section 542.33 would continue to govern agreements, like the present one, made before that date. It is important to note that the new statute allows the enforcement of non-competition clauses by successors or assignees where the contract does "expressly authorize[ ] enforcement by a party's assignee or successor." § 542.335(f)2, Fla. Stat. (2003). This departs from the original legislation, which limited the enforcement of non-competition agreements to the original employer staying in the same business and area. Under the new provision, non-competition agreements can be enforced by assignees, but only if the agreement expressly so provides. Here, the contract does not so provide. Thus under either statute the non-competition clause in this case is not enforceable by the assignee.
Given the nature of the public policy regarding non-competition provisions in employment agreements under section 542.33, it is not possible for a successor owner of the Station  and especially one who received no assignment of the original corporation's rights under the non-competition agreement  to have good faith in using the clause to interfere with Cole's right to find employment with another radio station in the same market. To hold otherwise is to invite conduct impairing competition authorized by no enforceable contract simply by ignoring the meaning of both the contract and the governing law. As we said, the basic policy is still in favor of competition, to enforce anti-competitive agreements only where the statutes specifically so authorize. As we have seen, the contract in question does not permit an assignment of the non-competition clause, and therefore the law precludes any attempt on the part of the successor to enforce it.
REVERSED.
POLEN and MAY, JJ., concur.
NOTES
[1] See AMERICAN HERITAGE DICTIONARY 877-78 (3rd ed.) ("however adv. ... 4. In spite of that; nevertheless; yet ... 5. On the other hand; by contrast ...").