NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

COLLIER HMA PHYSICIAN ) 
MANAGEMENT, LLC, d/b/a )
PHYSICIANS REGIONAL MEDICAL )
GROUP, a Florida limited liability )
company, )
  )
        Appellant, )
  )
v. )      Case No. 2D16-1204
  )
BRIAN MENICHELLO, M.D., an )
individual, )
  )
        Appellee. )
_____ )

Opinion filed May 31, 2017.

Appeal from the Circuit Court for Collier
County; Hugh D. Hayes, Judge.

Alan D. Lash, Martin B. Goldberg,
Lorelei J. Van Wey, and Justin C.
Fineberg, of Lash & Goldberg LLP,
Miami, for Appellant.

Lawrence A. Farese and Michael R.
Whitt, of Robins Kaplan LLP, Naples, for
Appellee.


WALLACE, Judge.

In this case we are called upon to determine the enforceability of a

restrictive covenant in an employment agreement between Collier HMA Physician

Management, LLC, d/b/a Physicians Regional Medical Group, a Florida limited liability

company (Collier HMA), and Brian Menichello, M.D. (Dr. Menichello).  Collier HMA

appeals the circuit court's final summary judgment in favor of Dr. Menichello entered on

the theory that the restrictive covenant was unenforceable because Collier HMA was a

"successor" employer and the employment agreement did not expressly authorize

enforcement of the covenant by an assignee or successor as required under section

542.335(1)(f), Florida Statutes (2012).  Because the circuit court erred in basing its

ruling on what it deemed to be the "substance" of a merger transaction involving Collier

HMA's ultimate parent instead of on traditional principles of corporate law, we reverse.

## I.  THE FACTUAL AND PROCEDURAL BACKGROUND

Collier HMA is a Florida limited liability company with its principal place of

business in Collier County.[1]  The company owns and operates a health care business

that employs approximately forty physicians and operates two hospitals.  Collier HMA

also has two full-service medical clinics, one in Naples and one in Bonita Springs.

Dr. Menichello is a medical doctor licensed to practice medicine in Florida.

In September 2012, Collier HMA entered into an Employment Agreement (the

Agreement) with Dr. Menichello.  In accordance with the Agreement, Dr. Menichello was

---

[1]The circuit court conducted an evidentiary hearing on Collier HMA's motion for a temporary injunction.  However, there has not been a final evidentiary hearing on the merits in the circuit court.  The facts stated in this opinion are drawn from the pleadings, the transcript of the hearing on the motion for the temporary injunction, the depositions on file, the affidavits, and other documents in the record.  We review these facts in the light most favorable to Collier HMA as the party against whom summary judgment was entered.  See Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 259 (Fla. 2002).

to practice medicine at Collier HMA and its two hospitals.  The term of the Agreement was for three years, but it was terminable by either party on ninety days' notice.

The Agreement, as amended, included a restrictive covenant that provided in pertinent part, as follows:

> **6.7. Restrictive Covenant.**  During the term of this Agreement, and for the 12-month period after this Agreement expires or is terminated, you won't have any financial relationship, including, without limitation, as an employee or independent contractor, with Naples Community Hospital, Inc., Lee Memorial Health System or Millennium Physician Group, nor any organization that directly or indirectly controls, is controlled by, or is under common control with, Naples Community Hospital, Inc., Lee Memorial Health System or Millennium Physician Group.

Notably, the Agreement does not provide that it is binding upon and enforceable by the successors and assigns of the parties.  Instead, the Agreement expressly provides to the contrary:

> **6.11. No Third-Party Beneficiaries.**  The terms and provisions of this Agreement are intended solely for the benefit of you and us.  It is not the intention of the parties to confer third-party beneficiary rights upon any other person.

The absence of a provision for the enforcement of the Agreement by the successors and assigns of the parties is pertinent to their arguments regarding the enforceability of the restrictive covenant under section 542.335(1)(f).

In September 2012, when the parties entered into the Agreement and Dr. Menichello began the three-year term of his employment, Collier HMA was part of a large group of medical businesses that were ultimately controlled by Health Management Associates, Inc. (HMAI), a Delaware corporation with its headquarters and principal place of business in Naples.  During the term of the Agreement, Community

Health Systems, Inc. (CHS), effected a merger transaction whereby it acquired control of all of the businesses in the chain that were previously subject to the ultimate control of HMAI. An explanation of the ownership of Collier HMA and its place in the family of several other companies related to it both before and after the merger is necessary to an understanding of the parties' arguments and the issue to be decided.

As is often the case with medical businesses, the structure of these companies was and remains characterized by multiple levels or tiers of ownership. At the first tier, Collier HMA owned and operated the business where Dr. Menichello was employed. At the second tier up the chain, Collier HMA was owned by a single member, Southwest Florida HMA Holdings, LLC. At the third tier, that entity was owned by Health Management Associates, LP. At the fourth tier, Health Management Associates, LP, was owned by Health Management General Partner, LLC. At the fifth tier, that entity was owned by Collier HMA's ultimate parent company, HMAI. The stock of HMAI was publicly traded. Thus, the equity interest in HMAI changed hands regularly. By contrast, the ownership of Collier HMA and the other companies in the multi-tiered ownership structure remained constant.

The merger by which CHS acquired HMAI, the ultimate parent of Collier HMA at the top tier of the ownership structure, occurred in January 2014. This transaction was structured as follows: CHS caused to be created a wholly-owned subsidiary named FWCT-2 Acquisition Corporation (FWCT-2). Upon approval of the merger by the necessary parties, FWCT-2 merged with and into HMAI, with the result that HMAI survived as a wholly-owned subsidiary of CHS.

- 4 -

After the merger, the stock of HMAI was no longer publicly traded. But HMAI survived the merger and continued to operate, as did all of the subsidiaries in the chain of ownership below HMAI. Obviously, there was a change in the ownership of HMAI, but there was no change in the ownership of its subsidiary companies, including Collier HMA. Indeed, Collier HMA continued to exist and to operate the medical practice, with Southeast Florida HMA Holdings, LLC, as its sole member, just as before the merger. Also, just as before, Dr. Menichello continued to be employed by and to receive his compensation from Collier HMA.

After the CHS merger, Dr. Menichello became dissatisfied with certain aspects of the continued operations of Collier HMA. Although we need not detail Dr. Menichello's complaints here, they related primarily to a claimed insufficiency in staffing and other services that he believed were necessary to the optimum operation of his practice. On September 24, 2014, Dr. Menichello gave Collier HMA ninety days' written notice of his intention to terminate the Agreement without cause effective December 24, 2014. Afterwards, Collier HMA learned that Dr. Menichello intended to begin working for Naples Community Hospital, Inc. (NCH), or one of its affiliates. On October 30, 2014, Collier HMA sent Dr. Menichello a letter reminding him of the provisions of the restrictive covenant in the Agreement. Collier HMA also informed Dr. Menichello of its intent to seek enforcement of the restrictive covenant in the event of a breach. At the end of the ninety-day notice period, Dr. Menichello became employed by NCHMD, Inc., an affiliate of NCH.

On December 29, 2014, Collier HMA filed a Verified Complaint for injunctive relief against Dr. Menichello and a Motion for Temporary Injunction. In

particular, Collier HMA sought injunctive relief against Dr. Menichello prohibiting his employment in breach of the provisions of the restrictive covenant. Dr. Menichello filed an answer, affirmative defenses, and a counterclaim for declaratory relief in response to the complaint. Pertinent to the issues in this case, Dr. Menichello raised what the parties characterized as the "successor defense" in his fifth affirmative defense as follows:

> Community Health Systems, Inc. ("CHS") is the successor to Health Management Associates, Inc. ("HMA") in the ownership, operation, and control of Physicians Regional Healthcare System and affiliated companies, including in particular the Defendant's former employer, Collier HMA Physician Management, LLC. The Restrictive Covenant does not expressly authorize enforcement by a party's successors or assigns. Therefore, the Plaintiff, as a subsidiary and affiliate of the successor CHS, lacks standing to enforce the Restrictive Covenant, and this Court must refuse enforcement of the Restrictive Covenant, pursuant to Fla. Stat. § 542.335(1)(f).

Dr. Menichello also asserted the theory of the "successor defense" in his counterclaim seeking declaratory relief against Collier HMA.

The circuit court conducted a hearing over several days on Collier HMA's motion for a temporary injunction. At the conclusion of the hearing, the circuit court denied the motion. Collier HMA appealed the denial of its motion for temporary injunction, and this court affirmed the circuit court's order on January 15, 2016. Collier HMA Physician Mgmt., LLC v. Menichello, 185 So. 3d 1241 (Fla. 2d DCA 2016) (table decision).

## II. THE CIRCUIT COURT'S RULING

Dr. Menichello moved for a partial summary judgment on his successor defense and on his related counterclaim seeking a declaratory judgment that the

- 6 -

restrictive covenant was not enforceable. The circuit court granted the motion, ruling as follows:

> 1. The record evidence establishes beyond dispute that the Defendant's employer, Collier HMA Physician Management, LLC ("Collier HMA"), was acquired by a third party, Community Health Systems, Inc. ("CHS"), through its wholly owned subsidiaries, during the course of the Defendant's employment.
>
> 2. As a result of its acquisition by CHS during the course of Defendant's employment, the Plaintiff, Collier HMA, is a "successor" employer within the meaning of Fla. Stat. § 542.335(1)(f).
>
> 3. Pursuant to Fla. Stat. § 542.335(1)(f), a restrictive covenant is not enforceable by successors or assigns unless the restrictive covenant expressly authorizes such enforcement.
>
> 4. Neither the Employment Agreement at issue in this case, nor the restrictive covenant in particular, authorizes enforcement of the restrictive covenant by successors or assigns.
>
> 5. Therefore, the restrictive covenant is not enforceable by the Plaintiff as a matter of law.
>
> 6. There is no genuine issue as to any material fact relative to the successor defense and the Defendant is entitled to a judgment as a matter of law on the successor defense and related Counterclaim for Declaratory Judgment.

The circuit court's written findings do not explain the rationale underlying its conclusion that Collier HMA had become a successor employer. However, the circuit court noted that it based its ruling in part on the testimony and documentary evidence presented at the hearing on the motion for the temporary injunction. At the conclusion of that hearing, portions of the circuit court's oral ruling provide important clues to its thinking:

> And so I think you—you look at form over substance and—or the—you don't get—reverse that and say you don't

- 7 -

> get carried away by looking at the form—formal structure;
> <u>you look at the substance of it, who really owns it</u>.  And—
> and, obviously, in this case the HMA—original HMA
> company is—I mean, is definitely owned by another
> corporate structure.

(Emphasis added.)  The circuit court also noted that after the merger, there were certain indicia of a new employer-employee relationship in the mode of operation of Collier HMA.  The circuit court noted as an example that Dr. Menichello had been required to submit to a drug screening after the merger as if he had been a new employee of the company.  Thus, in applying section 542.335(1)(f) to the question of whether Collier HMA had become a successor entity after the merger, the circuit court viewed its task as to ferret out the substance of what had occurred rather than to examine the formal structure of the transaction and to determine whether there had been any change in the identity of Dr. Menichello's employer.

After the entry of the order granting Dr. Menichello's motion for summary judgment, the circuit court entered a final summary judgment in his favor.  This appeal followed.

### III.  THE STANDARD OF REVIEW

The standard of review for an order granting a motion for summary judgment is de novo and requires a two-pronged analysis.  <u>Volusia County v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126, 130 (Fla. 2000).  Summary judgment is proper only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, and (2) the moving party is entitled to a judgment as a matter of law.  <u>See</u> <u>id.</u>; <u>Huntington Nat'l Bank v. Merrill Lynch Credit Corp.</u>, 779 So. 2d 396, 398 (Fla. 2d DCA 2000).  "If the record

reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper." Holland v. Verheul, 583 So. 2d 788, 789 (Fla. 2d DCA 1991).

## IV.  COLLIER HMA'S APPELLATE ARGUMENTS

On appeal, Collier HMA makes three arguments.  First, the circuit court misinterpreted and misapplied section 542.335(1)(f) in concluding that Collier HMA became a successor employer after the merger so as to preclude it from enforcing the restrictive covenant.  Second, after the merger, Dr. Menichello executed an amendment to the Agreement in which he ratified and reaffirmed all terms and conditions of the Agreement and all prior amendments, including the restrictive covenant.  Thus, Collier HMA may enforce the restrictive covenant against Dr. Menichello.  Third, and in the alternative, there were genuine issues of material fact regarding the applicability of the successor defense that precluded the entry of a summary judgment in favor of Dr. Menichello on that issue.  Based on our disposition of Collier HMA's first argument, we need not address its second and third arguments.

## V.  DISCUSSION

Section 542.335(1)(f), provides as follows:

(1) Notwithstanding s. 542.18 and subsection (2), enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited.  In any action concerning enforcement of a restrictive covenant:

. . . .

(f) The court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is a third-party beneficiary of such contract or is

an assignee or successor to a party to such contract, provided:

       1. In the case of a third-party beneficiary, the restrictive covenant expressly identified the person as a third-party beneficiary of the contract and expressly stated that the restrictive covenant was intended for the benefit of such person.

       2. In the case of an assignee or successor, the restrictive covenant expressly authorized enforcement by a party's assignee or successor.

Under the statute, a court may not refuse to enforce a restrictive covenant because the party seeking enforcement is a third-party beneficiary of the contract, an assignee, or a successor of a party to the contract. See § 542.335(1)(f). In other words, in accordance with section 542.335(1)(f), as long as the contract expressly provides for enforcement of the restrictive covenant by a third-party beneficiary, assignee, or successor, a court may not refuse enforcement of the restrictive covenant on the ground that the entity seeking enforcement is not a party to the contract. See Cellco P'ship v. Kimbler, 68 So. 3d 914, 917 (Fla. 2d DCA 2011); Marx v. Clear Channel Broad., Inc., 887 So. 2d 405, 408 (Fla. 4th DCA 2004); Tusa v. Roffe, 791 So. 2d 512, 514 (Fla. 4th DCA 2001).

In his Fifth Affirmative Defense and in his counterclaim for declaratory relief, Dr. Menichello maintained that Collier HMA had become a "successor" within the meaning of section 542.335(1)(f) after the CHS merger. The circuit court agreed. Because the Agreement did not authorize enforcement of the restrictive covenant by successors, the circuit court ruled that Collier HMA—as a successor—did not have the right to enforce the restrictive covenant against Dr. Menichello. Thus, the question of Collier HMA's right to enforce the restrictive covenant against Dr. Menichello requires us

to determine whether Collier HMA qualified as a successor after the merger within the meaning of the statute.

Section 542.335 does not provide a definition of the term "successor." The context in which the term is used requires us to seek the meaning of the term as it relates to corporations and other business entities. In this context, the term "successor" denotes "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary 1660 (10th ed. 2014); see also Corneal v. CF Hosting, Inc., 187 F. Supp. 2d 1372, 1375 (S.D. Fla. 2001) ("The term successor 'is generally applicable to corporations wherein one corporation by a process of amalgamation, consolidation or duly authorized legal succession becomes vested in the rights and assumes the burdens of its predecessor corporation.' " (quoting Int'l Ass'n of Machinists & Local Lodge #954 v. Shawnee Indus., Inc., 224 F. Supp. 347, 352 (W.D. Okla. 1963))).

The status of Collier HMA after the CHS merger does not comport with the standard definition of a successor as it relates to corporations or other business entities. Placing our focus narrowly on Collier HMA, we see that it had not been consolidated with or amalgamated into another company after the merger. And Collier HMA had not acquired the rights of or assumed the burdens of any other entity. Indeed, the undisputed evidence showed that nothing about the corporate structure or ownership of Collier HMA was different after the merger. Collier HMA continued in existence as a single member limited liability company. It did not sell or otherwise transfer any of its assets. One could not identify a successor entity to Collier HMA as defined above because its ownership had not altered and it continued to operate with the same assets

and personnel after the merger. Furthermore, Collier HMA had not assigned the Agreement to another entity because no such assignment was required. And if we step back to look at the larger picture, we see that Collier HMA continued to function after the merger as a part of the chain of health care businesses that had been part of the HMAI network.

If we take an even broader view, we must acknowledge that the ownership of HMAI—the ultimate parent of Collier HMA at the top of the multi-tiered chain of companies—did change after the merger. Obviously, CHS had acquired HMAI, the ultimate parent of Collier HMA. But the change in the ownership of HMAI did not cause any change in the ownership of Collier HMA. More to the point, the acquisition of HMAI by CHS did not make CHS the successor to Collier HMA. The argument to the contrary is inconsistent with the proposition that "[a] parent corporation and its wholly-owned subsidiary are separate and distinct legal entities." Am. Int'l Grp., Inc. v. Cornerstone Buss., Inc., 872 So. 2d 333, 336 (Fla. 2d DCA 2004) (citing Gladding Corp. v. Register, 293 So. 2d 729, 732 (Fla. 3d DCA 1974)). The idea that CHS became a successor to Collier HMA after the merger is also inconsistent with the principle that a parent corporation cannot exercise the rights of its subsidiary. See id. at 336. Notably, Dr. Menichello did not plead or prove that Collier HMA was operated as the mere instrumentality of CHS so as to warrant a disregard of the distinction between Collier HMA and its ultimate parent five or six tiers above it in the chain of ownership. See generally Unijax, Inc. v. Factory Ins. Ass'n, 328 So. 2d 448, 454 (Fla. 1st DCA 1976) (discussing the elements that must be proved to establish that a subsidiary entity is the mere instrumentality of the parent).

In response to these points, Dr. Menichello argues here—as he did successfully in the circuit court—that a proper application of section 542.335(1)(f) to the merger transaction under review in this case requires us to look at the substance of the transaction, not to the form by which it was structured. Dr. Menichello explains his position as follows:

> Here, CHS acquired HMA and all of its subsidiaries by merging HMA into a wholly owned CHS subsidiary. All ownership, control, and management of HMA and its subsidiaries, including Collier HMA, succeeded to CHS as of the date of the transaction. As a result of the merger, CHS, through its wholly owned subsidiary, became vested with the rights and duties of HMA. Thus, as the lower court correctly found, CHS is the "successor-by-merger" of HMA and all of its subsidiaries.

(Record references omitted.) Dr. Menichello concedes that Collier HMA survived the merger transaction. Nevertheless, he contends that Collier HMA survived only "as a wholly owned subsidiary and an employment arm of the successor, CHS, a total stranger to the Employment Agreement with Dr. Menichello." Dr. Menichello concludes that since Collier HMA is now nothing more than a subsidiary of CHS, it does not have the right to enforce the restrictive covenant because of the absence of the necessary authorization for enforcement by successors in the Agreement.

Based on the teaching of the Florida Supreme Court in Corporate Express Office Products, Inc. v. Phillips, 847 So. 2d 406 (Fla. 2003), we must reject Dr. Menichello's argument. In Corporate Express, the court affirmed that an analysis of the enforceability of restrictive covenants after a stock purchase, asset purchase, or corporate merger must be based on "the traditional principles of corporate law." Id. at 414. In other words, courts must rely on the "form of the commercial transaction" under

- 13 -

review in determining the enforceability of a restrictive covenant after the completion of a stock purchase, asset purchase, or corporate merger.  Id.  The court rejected the Fifth District's reliance on a "culture and mode of operation" analysis in the case under review.  Id.  The court also expressly disapproved what it characterized as the Fifth District's substitution of "a novel test of changing corporate identity based on changes in corporate culture and mode of operation for well-established principles of commercial transactions."  Id. (citing Phillips v. Corp. Express Office Prods., Inc., 800 So. 2d 618, 620 (Fla. 5th DCA 2001)).  After expressing its disapproval of the Fifth District's substance-over-form analysis, the court explained the rationale for the correct approach to determining the enforceability of a restrictive covenant after the completion of a stock sale, asset sale, or corporate merger as follows:

> Reliance on changes in corporate culture and mode of operation as a measure of whether an employer has changed identity and therefore must obtain a consensual assignment of a noncompete agreement would inject unnecessary uncertainty into corporate transactions. Changes in corporate culture occur frequently, often in response to market forces and without a corresponding change in corporate structure.  As long as the other prerequisites to the validity of a noncompete agreement are met, neither a 100 percent stock purchase nor a merger affects the enforceability of the agreement.

 Id.  Thus, the court rejected the approach adopted by the circuit court that would attempt to ascertain the "substance" of the transaction instead of a more practical focus on the transaction's structure following traditional principles of corporate and business law.[2]

---

[2]We understand that in Corporate Express the court considered section 542.33, Florida Statutes (1985), the version of the statute applicable to restrictive covenants entered into before July 1, 1996.  Section 542.335, Florida Statutes (Supp.

- 14 -

Accordingly, we must disapprove the effort to determine the question of whether CHS was a successor to Collier HMA by trying to discover what had "really happened" when the dust settled after CHS's acquisition of HMAI. Instead, we must focus on what occurred following traditional principles of corporate and business law. As we have seen, the merger transaction concluded with CHS in control of HMAI, Collier HMA's ultimate parent. Nevertheless, there was no change in the ownership structure or assets of Collier HMA. Granted, CHS became the ultimate parent of Collier HMA as a result of the merger, but CHS's status as the ultimate parent of Collier HMA did not give it the authority to enforce the restrictive covenant in the agreement. See Cellco P'ship, 68 So. 3d at 917-18. Viewing what occurred based on traditional principles of corporate law, no other entity emerged from the transaction as a successor to Collier HMA. Tellingly, Dr. Menichello continued to be employed by and to receive his compensation from Collier HMA. And, of course, Collier HMA could not be a successor to itself. As the only other signatory to the Agreement, Collier HMA had the right to seek enforcement of the restrictive covenant in its own contract. See Chen v. Cayman Arts, Inc., No. 10-80236-CIV, 2011 WL 782279, *8 (S.D. Fla. Feb. 24, 2001). It follows that Dr. Menichello's successor defense fails as a matter of law.

---

1996), replaced section 542.33 effective July 1, 1996. See ch. 96-257, §§ 1-2, Laws of Fla. Nevertheless, the court's analysis of the factors to be considered in determining the effect of a stock purchase, asset purchase, or a corporate merger in construing the statute remains generally applicable. See Johnson Controls, Inc. v. Rumore, No. 8:07-CV-1808-T-17TBM, 2008 WL 203575, *7 (M.D. Fla. Jan. 23, 2008) ("In Corporate Express, the Florida Supreme Court determined that a successor corporation's ability to enforce noncompete agreements entered into between employees and the predecessor corporation depends on the type of business transaction or transfer.").

## VI.  CONCLUSION

For the foregoing reasons, the circuit court erred in entering the order granting summary judgment and the final summary judgment in favor of Dr. Menichello. Accordingly, we reverse the order granting summary judgment and the final summary judgment and remand this case to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.


MORRIS and LUCAS, JJ., Concur.