839 So.2d 781 (2003)
SEPRO CORPORATION, Appellant/Cross Appellee,
v.
FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee/Cross Appellee, and Griffin, L.L.C., Appellee/Cross Appellant.
No. 1D02-0213.
District Court of Appeal of Florida, First District.
February 12, 2003.
Rehearing Denied March 20, 2003.
*782 W. Douglas Moody, Jr., Esquire of Myers and Fuller, P.A., Tallahassee, for Appellant/Cross Appellee SePRO Corporation.
Teri L. Donaldson, General Counsel; Stacey D. Cowley, Senior Assistant General Counsel, Tallahassee, for Appellee/Cross Appellee Florida Department of Environmental Protection.
Susan L. Kelsey, Esquire and Karen D. Walker, Esquire of Holland and Knight, LLP, Tallahassee, for Appellee/Cross Appellant Griffin, L.L.C.
BENTON, J.
SePRO Corporation (Sepro) filed in circuit court seeking to block disclosure of asserted trade secrets, in response to a public records request that Griffin, L.L.C. (Griffin) had addressed to the Florida Department of Environmental Protection (DEP). Before entering the order under review, the trial court allowed Griffin to intervene in support of the request that sparked the lawsuit. To the extent the trial court denied Sepro relief, Sepro has appealed. To the extent the trial court granted Sepro relief, Griffin has taken a cross-appeal. We affirm.

I.
Sepro was under contract to DEP to give certain assistance in eradicating hydrilla from specified lakes, when Griffin made its request for public records in DEP's custody, including those relating to Sepro "and its provision of fluridone and/or related services ... [and] the effectiveness of Sonar [and Avast!] brand fluridone in treating hydrilla, including but not limited to, the results of any tests performed by the Department or any third-party."
After Griffin made its public records request, Sepro's counsel wrote DEP that some of the information Sepro had furnished DEP should be deemed trade secrets. See generally § 403.111(1), Fla. Stat. (2002). Upon learning of Griffin's request, Sepro wrote DEP designating as trade secrets: "(1) Any ReMetrix Bathymetric, Biosonic or Vegetation study; (2) Any ReMetrix Biomass study; (3) Any SePRO prescriptive treatment formula for [specified] Florida lakes and water bodies." DEP advised Sepro that it intended to disclose the documents to Griffin nevertheless, and would presumably have done so if Sepro had not filed suit to prevent disclosure.
In its complaint for declaratory judgment and motion for supplemental relief, Sepro claimed that "studies, sampling and analysis related to the tolerance of hydrilla to Fluridone treatments, water body movements, Fluridone concentrations, proposed Fluridone treatment prescriptions; and vegetation studies related to the type, density and location of various invasive plant species affecting Florida water bodies treated with Fluridone" had been furnished to DEP "on a limited and select basis solely for the purpose of allowing the Department's scientist to confirm the efficacy of its Fluridone Treatment Program" and were entitled to "`trade secret' protection." These filings were not required by law. On appeal, no party has attached any significance to whether DEP actually contracted for these studies, samples or analyses. The complaint invoked sections *783 403.111, 688.002, 812.081 and 815.045, Florida Statutes (2000).
With regard to documents (including some that had been transmitted electronically) that were not labeled confidential, Jeffrey David Schardt, a DEP employee, testified at the evidentiary hearing, "I don't recall us getting anything in writing from SePRO regarding confidential." But Mr. Schardt did testify that he was orally "asked to use the information like the information that was ... marked confidential."
Whether or not the documents not labeled confidential contain all the information necessary to gauge the efficacy of Sepro's efforts under the contract is not clear. In any event, the trial court entered the order under review concluding that certain documents (again including some e-mail) did "not contain information that meets the definition of `trade secret' under § 812.081, Florida Statutes, because SePRO failed to timely mark the documents as confidential prior to the Department receiving a public records request."

II.
Inasmuch as it "is the policy of this state that all state, county, and municipal records shall be open for personal inspection by any person," § 119.01(1), Fla. Stat. (2002), the failure to identify information furnished to a state agency as putatively exempt from public disclosure effectively destroys any confidential character it might otherwise have enjoyed as a trade secret. Both statutory definitions of trade secrets to which the parties have referred us require this conclusion. See §§ 688.002(4)(b) & 812.081(1)(c), Fla. Stat. (2002). Section 812.081(1)(c), Florida Statutes (2002), broadly defines trade secrets as encompassing
the whole or any portion or phrase of any formula, pattern, device, combination of devices, or compilation of information which is for use, or is used, in the operation of a business and which provides the business an advantage, or an opportunity to obtain an advantage, over those who do not know or use it. "Trade secret" includes any scientific, technical, or commercial information, including any design, process, procedure, list of suppliers, list of customers, business code, or improvement thereof. Irrespective of novelty, invention, patentability, the state of the prior art, and the level of skill in the business, art, or field to which the subject matter pertains, a trade secret is considered to be:
1. Secret;
2. Of value;
3. For use or in use by the business; and
4. Of advantage to the business, or providing an opportunity to obtain an advantage, over those who do not know or use it,
but only "when the owner thereof takes [reasonable] measures to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." Id. See generally Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410-11 (11th Cir.1998); Lee v. Cercoa, Inc., 433 So.2d 1, 2 (Fla. 4th DCA 1983). To like effect, section 688.002(4), Florida Statutes (2002), provides:
"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and *784 (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
The trade secret owner who fails to label a trade secret as such, or otherwise to specify in writing upon delivery to a state agency that information which it contends is confidential and exempt under the public records law is not to be disclosed, has not taken measures or made efforts that are reasonable under the circumstances to maintain the information's secrecy. As a practical  and therefore as a legal  matter, a conversation with a state employee is not enough to prevent the information's being made available to anybody who makes a public records request.

III.
The final order also concluded that all information "that SePRO adequately and timely" identified as "confidential, by stamping such documents as `confidential' at the time the documents were submitted to DEP" was "trade secret information under the definition of `trade secret' in § 812.081, Florida Statutes, and that such documents are confidential and exempt from the public disclosure mandate of § 119.07(1) pursuant to the exemptions in §§ 815.04(3) and 815.045, Florida Statutes." On cross-appeal, Griffin contends that not a single one even of the documents marked confidential when furnished to DEP qualifies as a trade secret exempt from disclosure as public records.
Initially, it is clear that a private party cannot render public records exempt from disclosure merely by designating information it furnishes a governmental agency confidential. Neither the desire for nor the expectation of non-disclosure is determinative. See Shevin v. Byron, Harless, Schaffer, Reid and Assocs., Inc., 379 So.2d 633, 635 (Fla.1980). Sepro concedes the point: "Indisputably, marking a document `confidential' does not make the information a trade secret." Sepro's Reply and Answer Brief, p. 9. "It is of no consequence that [a party furnishing information] wishes to maintain the privacy of particular materials filed with the department, unless such materials fall within a legislatively created exemption to Ch. 119, F.S." Op. Att'y Gen. Fla. 90-104, at 323 (1990). See also Ops. Att'y Gen. Fla. 95-58, at 179-80 (1995) & 80-31, at 79 (1980).
What is now codified as section 815.045, Florida Statutes (2002), was originally codified as section 119.165, Florida Statutes (Supp.1994), as part of the Public Records Law. While Section 815.045, Florida Statutes (2001), reads more like a statement of legislative intent than a conventionally phrased provision of positive law, it makes its intended effect clear, in providing:
The Legislature finds that it is a public necessity that trade secret information as defined in s. 812.081, and as provided for in s. 815.04(3), be expressly made confidential and exempt from the public records law because it is a felony to disclose such records. Due to the legal uncertainty as to whether a public employee would be protected from a felony conviction if otherwise complying with chapter 119, and with s. 24(a), Art. I of the State Constitution, it is imperative that a public records exemption be created. The Legislature in making disclosure of trade secrets a crime has clearly established the importance attached to trade secret protection. Disclosing trade secrets in an agency's possession would negatively impact the business interests of those providing an agency such trade secrets by damaging them in the marketplace, and those entities and individuals disclosing such trade secrets would hesitate to cooperate with that agency, which would impair the effective and efficient administration of governmental functions. Thus, the public and *785 private harm in disclosing trade secrets significantly outweighs any public benefit derived from disclosure, and the public's ability to scrutinize and monitor agency action is not diminished by nondisclosure of trade secrets.
The original placement in Chapter 119 evinces a contemporaneous view that the exemption from the public records disclosure requirements that section two of chapter 94-100, Laws of Florida (1994), enacted applies to more than computer data, programs or supporting documentation. Just as the trial court ruled, the language of this provision should be read to exempt from disclosure as public records all trade secrets as defined in section 812.081(1)(c), Florida Statutes (2001), whether or not they are stored on or transmitted by computers.
Although we recognize that the provision is currently codified in a chapter entitled "Computer-Related Crimes," the original codifier's broader view of the statute is more in keeping with the breadth of the rationale the statute articulates. See § 11.242(5)(e), Fla. Stat. (2002) ("Any section... may be transferred from one location to another.") and § 11.242(5)(h), Fla. Stat. (2002) ("[A]lterations ... not affecting the construction or meaning of the statutes or laws, may be freely made."). See generally Enslein v. Gere, 497 So.2d 705, 706 (Fla. 4th DCA 1986). Also militating in favor of a broader view of the exemption's reach is the provision's separate reference to section 812.081, a reference which would be superfluous if the exemption were intended to apply only to computer data, programs or supporting documentation exempted by section 815.04(3)(a).
Section 815.04(3)(a), Florida Statutes (2001), on which the order under review also relies, provides:
Data, programs, or supporting documentation which is a trade secret as defined in s. 812.081 which resides or exists internal or external to a computer, computer system, or computer network which is held by an agency as defined in chapter 119 is confidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution.
Id. Defining trade secrets by reference to section 812.081(1)(c), Florida Statutes (2001), section 815.04(3)(a) plainly covers electronic mail.
The trial court found that all of the documents, including electronic mail, that Sepro had designated confidential fell within the criteria set out in section 812.081. This finding necessarily rests on factual determinations that are assailable on appeal only if unsupported by competent, substantial evidence. David Paul Tarver's testimony provided more than adequate support for the court's findings that the criteria were met.
Affirmed.
KAHN and LEWIS, JJ., CONCUR.