M.C. DEAN, INC., Plaintiff,

v.

CITY OF MIAMI BEACH, FLORIDA; and International Brotherhood of Electrical Workers, Local 349, Defendants.

CASE NO. 16-21731-CIV-ALTONAGA/O'Sullivan

United States District Court, S.D. Florida.

Signed August 8, 2016

Armin J. Moeller, Jr., Ashley Eley Cannady, Balch & Bingham, LLP, Jackson, MS, Jeffrey Scott York, Balch & Bingham LLP, Jacksonville, FL, for Plaintiff.

Robert F. Rosenwald, Jr., City of Miami Beach, Miami Beach, FL, Christopher N. Johnson, Grayrobinson, P.A., Miami, FL, Alan Eichenbaum, Plantation, FL, for Defendants.

## ORDER

CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE

THIS CAUSE came before the Court on Defendants, City of Miami Beach, Florida ("City") and International Brotherhood of Electrical Workers, Local 349's ("Local 349['s]") (collectively "Defendants[']") Motion to Dismiss Complaint [ECF No. 28] ("Motion"), for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), filed July 7, 2016. The Court has carefully reviewed the Complaint [ECF No. 1]; Motion; Plaintiff, M.C. Dean, Inc.'s ("M.C. Dean['s]") Response . . . ("Response") [ECF No. 30]; Defendants' Reply . . . ("Reply") [ECF No. 31]; and

applicable law. For the reasons explained below, the Motion is granted.

## I. BACKGROUND [1]

### A. Allegations of the Complaint

Plaintiff M.C. Dean is an electrical design-build and systems integration firm for complex, mission-critical organizations; it invests substantial funds in identifying, recruiting and training its employees. (*See* Compl. ¶ 6). Clark Construction Group, LLC ("Clark") is the general contractor for the Miami Beach Convention Center renovation project, and M.C. Dean is its subcontractor on that project. (*See id.* ¶ 7). M.C. Dean is contractually obligated to provide certified payrolls to Clark, disclosing private, personally identifying information such as the names, addresses, social security numbers, driver's license numbers, pay rates, fringe benefits, hours worked and other similar information of its employees. (*See id.* ¶ 8). M.C. Dean provided these payrolls to Clark and not to the City. (*See id.* ¶ 9).

M.C. Dean's success depends on its employees and monetary investment in recruitment and training processes. (*See id.* ¶ 6). Knowledge of M.C. Dean's training practices and employees' identities is valuable to groups lacking this knowledge, including Local 349. (*See id.*). In March 2016, Local 349 requested copies of M.C. Dean's certified payrolls from the City pursuant to the Florida Public Records Act. (*See id.* ¶ 10). M.C. Dean objected to the disclosure, and after the City reviewed M.C. Dean's position statement and expert's affidavit explaining the records constitute trade secrets (*see id.* ¶ 11), the City determined it would only disclose redacted

---

1. On a motion to dismiss for failure to state a claim for relief, the allegations of the Complaint are accepted as true.

certified payrolls to Local 349 (*see id.* ¶ 12).

Nevertheless, on March 22, 2016, the City informed M.C. Dean a City clerk had "inadvertently" disclosed un-redacted versions of the payrolls to Local 349. (*See id.* ¶¶ 12-13). M.C. Dean immediately requested the City retrieve copies of the payrolls from Local 349, and demanded Local 349 delete digital or electronic copies and destroy physical copies. (*See id.* ¶ 13). Local 349 denied these requests by the City and Plaintiff. (*See id.*). Plaintiff alleges Defendants caused and continue to cause misappropriation of Plaintiff's trade secrets. (*See id.*).

The Complaint's Affidavit of Matthew Kilpatrick [ECF No. 1–1], operations manager for the Florida Division of M.C. Dean, recounts the value of the information at issue (*see id.* ¶¶ 5–6), and the steps M.C. Dean has taken to protect it:

> M.C. Dean has taken measures to prevent the disclosure of the information to anyone other than those few who have been selected to have access for limited purposes, and M.C. Dean intends to continue such measures. For example, M.C. Dean provided the certified payrolls at issue to Clark Construction Group, LLC. M.C. Dean did not provide them to the City of Miami Beach or any other entity. M.C. Dean does not disclose a listing of its employees internally. Only selected Human Resources and Payroll personnel and the top executives of M.C. Dean have access to this information. M.C. Dean's strict confidentiality of this information recently resulted in the M.C. Dean employee in charge of recruiting for Florida being denied access to this type of information.

(*Id.* ¶ 7). The Affidavit of Dr. Steven Herscovici of consulting firm The Brattle Group, Inc. [ECF No. 1-1], also attached to the Complaint, addresses M.C. Dean's policy regarding the disclosure of its employee lists and personally identifying information of its electricians and electrical workers (*see id.* 2–3); describes the value of that information (*see id.* 3–4); explains different approaches to valuing employee lists such as M.C. Dean's (*see id.* 5–6); and concludes "certified payrolls include employee and personally identifying information which constitutes M.C. Dean's trade secrets and confidential business information especially since M.C. Dean maintains the confidentiality of such information" (*id.* 7).

The Complaint states two claims for relief against the City and Local 349. The first is titled, "Violation of Defend Trade Secrets Act ('DTSA')," and the second is for "Violation of the Florida Uniform Trade Secrets Act ('FUTSA')." (Compl. 4).

## B. City Code and Contract Provisions

The City's wage ordinance applies to its public contracts, including the prime contract between the City and Clark. (*See* Mot. Ex. A; Miami Beach Code ("Miami Beach Code") § 31-27). The prime contract with Clark requires it to maintain the payroll information at issue. For example,

> The Construction Manager's payroll records shall contain the name, address and social security number of each employee, his or her correct classification, rate of pay, daily and weekly number of hours worked, itemized deductions made and actual wages paid, with hourly base rate, hourly fringe rate and hourly benefit rate clearly indicated.

(Mot. Ex. A, ¶ 11.2.1(g) [ECF No. 28-1]). The duty to have this payroll information extends to subcontractors:

> The Construction Manager shall comply with, and shall require all Subcontractors to comply with, Sections 31-27 through 31-30 of the City Code, . . . with regard to minimum hourly wage rates

for all employees who provide services pursuant to this Agreement . . . .

\* \* \*

d. Construction Manager shall maintain payrolls and basic records relating thereto during the course of the Work and shall preserve such for a period of three (3) years thereafter for all laborers, mechanics, and apprentices working at the Project Site. Such records shall contain the name and address of each such employee; its [sic] current classification; rate of pay . . .; daily and weekly number of hours worked; deductions made; and actual wages paid.

(*Id.* ¶ 16.7.3 (alterations added)).

Requiring Clark to have the information mandated under the prime contract allows the City to conduct audits. (*See id.* ¶ 16.14). Furthermore, the prime contract clarifies none of the payroll information is protected: "Plans, prints, technical documents and data prepared or developed by Construction Manager, Subcontractors or Suppliers and furnished to the City in the performance of the Work shall be the property of City and may be used by City without restriction." (*Id.* ¶ 16.16.4; *see also id.* ¶ 16.16.3 ("Construction Manager further agrees to secure from all Subcontractors . . . and convey to city, all . . . trade secrets and similar rights associated with the Work . . . ." (alterations added)).

The Clark–M.C. Dean subcontract incorporates all of the provisions of the prime contract. (*See* Mot. Ex. B, § 1(a) [ECF No. 28-2] ). Indeed, M.C. Dean "assume[d] all obligations, risks and responsibilities which Clark has assume toward[ ] the Owner in accordance with the Contract Documents." (*Id.* § 1(b) (alterations added); *see also* § 26).

## II. STANDARD

■ "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937 (alteration added) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

■ In addressing a Rule 12(b)(6) motion, the Court considers the allegations of the complaint, exhibits attached or incorporated by reference, and exhibits attached to the motion to dismiss if they are central to the plaintiff's claim and undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005); *Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner &*

*Smith Inc.,* 295 F.R.D. 540, 546 n. 4 (S.D.Fla.2013).

## III. ANALYSIS

Defendants raise a number of arguments in their Motion in an effort to obtain a dismissal of the Complaint, with prejudice. The Court distills two principal arguments. M.C. Dean fails to allege two necessary elements of the claims asserted: (1) it took reasonable steps to protect its trade secret, and (2) any acts of misappropriation. (*See generally* Mot.). M.C. Dean insists in its Response it sufficiently alleges violations of the DTSA and the FUTSA. (*See generally* Resp.). The Court addresses these two arguments, as they are dispositive. But first, a brief overview of the two statutory causes of action is provided.

### A. The DTSA and FUTSA

#### i. Trade Secret

On May 11, 2016, the Defend Trade Secrets Act, Publ. L. 114-53, 130 Stat. 376, conferred on U.S. district courts subject matter jurisdiction over civil actions pertaining to the theft of trade secrets used in interstate or foreign commerce. *See* 18 U.S.C. § 1836(c) ("The district courts of the United States shall have original jurisdiction of civil actions brought under this section."). Under the DTSA, a trade secret is information for which:

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*Id.* § 1839(3). Similarly, under the FUTSA,

(4) "Trade secret" means information, including a formula, pattern, compila-

tion, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

FLA. STAT. § 688.002.

██ "In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Am. Red Cross v. Palm Beach Blood Bank, Inc.,* 143 F.3d 1407, 1410 (11th Cir.1998). Disclosing the "information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret." *In re Maxxim Med. Grp., Inc.,* 434 B.R. 660, 691 (Bankr. M.D.Fla.2010).

#### ii. Misappropriation

Liability under either act requires an act of misappropriation. *See* 18 U.S.C. § 1836 ("An owner of a trade secret that is misappropriated may bring a civil action under this subsection ...."); FLA. STAT. § 688.003–004 (alteration added). Under 18 U.S.C. section 1839(5), "misappropriation" means:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who—

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

(I) derived from or through a person who had used improper means to acquire the trade secret;

(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that—

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake;

(6) the term "improper means"—

(A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and

(B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition[.]

*Id.* § 1839(5)–(6) (alteration added).

The FUTSA similarly defines misappropriation broadly, as:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

1. Used improper means to acquire knowledge of the trade secret; or

2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:

a. Derived from or through a person who had utilized improper means to acquire it;

b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

FLA. STAT. § 688.002(2).

### B. Whether M.C. Dean plausibly alleges steps to protect its trade secret [2]

■ The Motion, in large part, takes issue with what Plaintiff does not allege: "[t]he Complaint omits a key party, key documents and glosses over a key chain of events." (Mot. 1 (alteration added)). According to Defendants, Plaintiff fails to allege any efforts it took to protect the "so-called trade secret information" when the information was disseminated to the third party, Clark. (*Id.* 2). Plaintiff does not allege Clark signed an agreement to keep the information confidential. (*See id.*).

---

**2.** Defendants' arguments concerning the insufficiency of the allegations supporting the existence of a trade secret are scattered throughout their Motion without seeming organization, first in the "Introduction" and "Facts" sections (Mot. 1–5), then in a section titled "Elements of a Trade Secret" (*id.* 7–10), and again in a section titled "The Information Is Not A Trade Secret" (*id.* 11–14). The Court has attempted to distill and address the salient issues together.

Plaintiff does not allege Clark breached such agreement or committed any wrongful at when it produced the information to the City. (*See id.*).

The DTSA and FUTSA counts are premised on the existence of trade secrets; Defendants assert freely providing the information to a third party without protection fails the laws' identical requirement of efforts to maintain the information's secrecy. (*See id.* 8). Defendants argue the documents produced "are not trade secrets as a matter of law." (*Id.* 2). Defendants insist "[l]awfully obtained information will not violate the law." (*Id.* 8 (alteration added)). Consequently, they state if there is "clear authority" the information was not protected, the trade secret claims should be dismissed. (*Id.* 11–14).

Defendants do not dispute M.C. Dean's allegation the described payroll information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from having it. Instead, they say whether employee-identifying information or payroll information can even be a trade secret is irrelevant. (*See* Reply, 3, n.1). Indeed, M.C. Dean's descriptions and the supporting Affidavits of Kilpatrick and Hercovici plausibly allege the payroll information at issue has independent value from not being generally known or readily ascertainable by proper means, thereby satisfying one element of the definition of trade secret. Defendants' key contention is that M.C. Dean's own allegations, combined with contract documents the Court is permitted to examine and the City's own wage ordinance, conclusively demonstrate M.C. Dean does not satisfy the second element of a trade secret: the requirement it took reasonable measures to keep the information secret. In this, Defendants are correct.

The terms and conditions of the prime contract between Clark and the City require compliance with the Miami Beach wage ordinance for public contracts and obligate Clark to maintain the very payroll information at issue. (*See* Mot. Ex. A; Miami Beach Code § 31-27). Meanwhile, the subcontract between Clark and M.C. Dean (*see* Mot. Ex. B), incorporates and requires strict compliance with the prime contract, and the City's wage ordinance requirements extend to subcontractors. M.C. Dean alleges it gave the payroll information to Clark, and it does not allege it imposed any restriction on Clark's use of it, be it through contract or any other protective mechanism. Defendants persuasively rely on *Laing v. BP Exploration & Production Inc.*, No. 8:13–CV–1041–T–23TGW, 2014 WL 272846, *4 (M.D.Fla. Jan. 14, 2014), and *Sepro Corporation v. Florida Department of Environmental Protection*, 839 So.2d 781 (Fla. 1st DCA 2003).

In *Laing*, the plaintiff formulated a proposal for BP to use in repairing the ruptured vessel following the 2010 explosion of an off-shore drilling platform, the famous Deepwater Horizon oil leak. *See* 2014 WL 272846, at *1. The plaintiff also presented the document to a lieutenant commander of the U.S. Coast Guard, who forwarded it to BP. *See id.* With regard to the trade secret claim, BP argued the plaintiff had failed to take reasonable steps to protect the secrecy of his idea; never marked the document given to the lieutenant commander as "confidential" or "secret;" and never asked him to treat it as secret, but rather asked him to share his idea with BP. *See id.* at *3. The court rejected the plaintiff's argument the adequacy of his efforts to maintain the secrecy of his idea could not be resolved on a motion to dismiss. *See id.* Rather, the adequacy of efforts to protect information could be resolved on a motion to dismiss given the

movant's burden is to "present 'clear authority' that the information [ ] the plaintiff identifies is not protected." *Id.* (alteration added; quoting *Allegiance Healthcare Corp. v. Coleman,* 232 F.Supp.2d 1329, 1335 (S.D.Fla.2002)).

Applying that standard, the court went on to find "clear authority" the information was not "reasonably maintained in requisite secrecy" as required by the FUTSA because it was "disclosed to a government official without an accompanying mechanism to maintain secrecy." *Id.* at *4 (citing *In re Maxxim,* 434 B.R. at 691). When the plaintiff unconditionally disclosed his idea to the lieutenant commander and other port directors, he failed to take reasonable steps to maintain the idea's secrecy. *See id.* The plaintiff failed to treat his idea as a trade secret when he directed the lieutenant commander to present the idea to BP, and "included no statement, written or verbal, that the idea should remain confidential." *Id.* Consequently, the court granted defendant's motion to dismiss with leave to amend. *See id.* at *5.

*Sepro* affirmed the trial court's order finding certain documents produced by Sepro under contract to the Florida Department of Environmental Protection did not contain information meeting the definition of trade secret under Florida Statutes section 812.081, "because SePRO failed to timely mark the documents as confidential prior to the Department receiving a public records request." 839 So.2d at 783. The appellate court noted the State's public records laws require " 'all state, county, and municipal records shall be open for personal inspection by any person,' § 119.01(1), Fla. Stat. (2002), [and so] the failure to identify information furnished to a state agency as putatively exempt from public disclosure effectively destroys any confidential character it might otherwise have enjoyed as a trade secret." *Id.* (alterations added). *Sepro* announced the rule:

[t]he trade secret owner who fails to label a trade secret as such, or otherwise to specify in writing upon delivery to a state agency that information which it contends is confidential and exempt under the public records law is not to be disclosed, has not taken measures or made efforts that are reasonable under the circumstances to maintain the information's secrecy.

*Id.* at 784 (alteration added); *see also Cubic Transp. Sys., Inc. v. Miami–Dade Cnty.,* 899 So.2d 453, 454 (Fla. 3d DCA 2005) (holding by failing to mark documents provided to the county as "confidential," the plaintiff failed to protect the documents' secrecy).

Consequently, and contrary to M.C. Dean's protestations in its Response, Florida law provides "clear authority" the information M.C. Dean alleges is a trade secret is not protected under the FUTSA. M.C. Dean furnished its payroll information to the prime contractor, Clark, on a City-project governed by the terms of a prime contract and subcontract, the City's wage ordinance, and the State's public records laws. Under its subcontract, which incorporated the prime contract requirements, M.C. Dean assumed all obligations and responsibilities Clark had toward the City in accordance with the prime contract. (*See* Mot. Ex. B § 1(b)). M.C. Dean does not allege it took any steps to maintain the secrecy of its information when it gave Clark the payroll information, whether by contract or by any other means. Further, M.C. Dean's contention section 16.4 of the prime contract limits the City to using the information and not disclosing it (*see* Resp. 9), is not supported by the contract language. (*See* Mot. Ex. A ¶ 16.16.4 (stating "data prepared" by "Subcontractors" "and furnished to City" "shall be the property of City and may be used by City without restriction.")). The City clerk's representation it would redact the

payroll information "is not enough to prevent the information's being made available to" Local 349 when it made its public records request. *Sepro*, 839 So.2d at 784.

M.C. Dean fails to allege it took reasonable steps to protect the secrecy of the information at issue, thus failing to satisfy the definition of trade secret as to both counts.

### C. Whether M.C. Dean plausibly alleges misappropriation

■ For liability to attach under the DTSA and FUTSA, the information must be the fruit of wrongful acquisition, or misappropriation. M.C. Dean does not allege the information was acquired through any improper means, such as acts of theft, bribery or a breach of a duty owed to it. As noted by Defendants, M.C. Dean appears to be claiming Local 349 acquired the information by accident or mistake, that is, the City erred in not producing a redacted copy of the payroll information in response to Local 349's public records request. (*See* Mot. 9). M.C. Dean argues the City was on notice "its knowledge was gained under circumstances giving rise to a duty to maintain its secrecy or limit its use." (Resp. 10).

Yet, as Defendants correctly explain, M.C. Dean fails to plausibly allege a "duty" to protect the information. (*See* Reply 4). Certainly the pertinent provisions of the prime contract, incorporated into the Clark–M.C. Dean subcontract, require Clark to provide it to the City without restriction. The described contractual provisions make abundantly clear the information at issue is the property of City and may be used by City without restriction. (*See* Mot. Ex. A ¶ 16.16.4). The allegation Local 349 knew the information was acquired by improper means (*see* Resp. 10), is wholly unsupported by any plausible facts, particularly in light of the quoted prime and subcontract provisions. As De-

fendants note, no information was acquired by accident or mistake; the very prime contract and subcontract pursuant to which the project is being constructed required Clark and M.C. Dean to disclose the information. (*See* Reply 4–5). Further, and germane to M.C. Dean's factual allegations here, "a conversation with a [city] employee is not enough to prevent the information's being made available to anybody who makes a public records request." *Sepro*, 839 So.2d at 784 (alteration added).

Given M.C. Dean consented to disclosure of the information by entering the subcontract, no misappropriation is alleged.

### IV. CONCLUSION

M.C. Dean fails to state plausible claims for relief. Notwithstanding Defendants' request the Complaint be dismissed with prejudice, Plaintiff will be given the opportunity to amend. M.C. Dean has until August 22, 2016 to file an amended complaint, failing which the case will be dismissed with prejudice. Defendants have requested the award of attorney's fees in having had to defend the action. (*See* Mot. 15; Reply 8). This request will not be entertained until any appeal is resolved or the time for filing a notice of appeal has passed, and only after the parties have properly conferred as required by Local Rule 7(a)(3).

Being fully advised, it is

**ORDERED AND ADJUDGED** that the Motion is **GRANTED.**

**DONE AND ORDERED** in Chambers at Miami, Florida this 8th day of August, 2016.