IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

OFFICE OF INSURANCE
REGULATION,

 Appellant,

v.

STATE FARM FLORIDA
INSURANCE COMPANY,

 Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-2301

_____/

Opinion filed March 20, 2017.

An appeal from the Circuit Court for Leon County.
James C. Hankinson, Judge.

Shaw P. Stiller, Chief Assistant General Counsel, and Elenita Gomez, Assistant General Counsel, Tallahassee, for Appellant.

C. Sha'ron James, Insurance Consumer Advocate, and Jennifer M. Ferris, Chief Counsel, Tallahassee, for Insurance Consumer Advocate, Amicus Curiae in support of Appellant.

Andrea Flynn Mogensen of Law Office of Andrea Flynn Mogensen, P.A., Sarasota, for First Amendment Foundation, Inc., Amicus Curiae in support of Appellant.

Tiffany A. Roddenberry and Karen D. Walker of Holland & Knight LLP, Tallahassee, for Appellee.

Major B. Harding, Erik M. Figlio, and Ruth E. Vafek of Ausley & McMullen, Tallahassee, for Florida Chamber of Commerce, Inc., Amicus Curiae in support of Appellee.

OSTERHAUS, J.

The Florida Office of Insurance Regulation appeals an order finding that State Farm Florida Insurance Company's "QUASR data" meets the definition of trade secret under Florida law and is exempt from public disclosure. We affirm because the evidence supports the trial court's conclusion.

I.

Section 624.424(10), Florida Statutes, requires insurers doing business in the State of Florida to file quarterly reports, known as QUASR reports, providing the following county-level data about its policies:

(a) Total number of policies in force at the end of each month.
(b) Total number of policies canceled.
(c) Total number of policies nonrenewed.
(d) Number of policies canceled due to hurricane risk.
(e) Number of policies nonrenewed due to hurricane risk.
(f) Number of new policies written.
(g) Total dollar value of structure exposure under policies that include wind coverage.
(h) Number of policies that exclude wind coverage.

In 2014, State Farm began filing its QUASR report with the Office on a diskette marked as confidential trade secret information. Aiming to keep its data confidential, its submission included a notice of trade secret as required by § 624.4213(1). After deducing that the Office intended to publicly release its QUASR data anyway, State Farm filed a complaint in circuit court seeking a declaratory judgment that its QUASR data constituted a trade secret exempt from

Florida's Public Records Act and an injunction to keep the Office from releasing it to the public.

State Farm's complaint alleged that it wrote very limited new business from 2007 to 2014 and began writing additional new homeowners business in the first quarter of 2014. It claimed that the county-level data and information provided in its QUASR report was trade secret information that would allow competitors to identify where its business and marketing efforts were focused. The trial court ultimately held a non-jury trial in March 2016. Based on a statement of standards that the parties jointly submitted to the court, the trial court required State Farm to prove that its QUASR data (1) was information; (2) which derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (3) was the subject of reasonable efforts to maintain its secrecy. The trial court found that the only disputed prong was (2), whether State Farm's QUASR data had actual or potential economic value. On this point, the court concluded from the evidence that State Farm satisfied the test. And it granted the relief that State Farm requested.

The Office now seeks reversal on appeal, arguing that State Farm failed to demonstrate that its QUASR data is a compilation of information that has independent economic value.

3

II.

A.

Florida has a broad public records policy providing "that all state, county, and municipal records are open for personal inspection and copying by any person." § 119.01(1), Fla. Stat. But the Legislature has exempted trade secrets from the public records law. See § 815.045, Fla. Stat. According to the statute, this is because "the public and private harm in disclosing trade secrets significantly outweighs any public benefit derived from disclosure, and the public's ability to scrutinize and monitor agency action is not diminished by nondisclosure of trade secrets." Id.

Under section 688.002(4), "trade secret" is defined as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 688.002(4), Fla. Stat. Likewise, section 812.081(c) defines "trade secret" as:

[T]he whole or any portion or phrase of any formula, pattern, device, combination of devices, or compilation of information which is for use, or is used, in the operation of a business and which provides the business an advantage, or an opportunity to obtain an advantage, over those who do not know or use it. The term includes any scientific, technical, or commercial information, including financial information, and includes any design, process, procedure, list of suppliers, list of

customers, business code, or improvement thereof. Irrespective of novelty, invention, patentability, the state of the prior art, and the level of skill in the business, art, or field to which the subject matter pertains, a trade secret is considered to be:

1. Secret;

2. Of value;

3. For use or in use by the business; and

4. Of advantage to the business, or providing an opportunity to obtain an advantage, over those who do not know or use it when the owner thereof takes measures to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

§ 812.081(c), Fla. Stat.

Florida law specifically provides a mechanism for insurers and others filing documents with the Office to claim a trade secret:

If any person who is required to submit documents or other information to the office or department pursuant to the insurance code or by rule or order of the office, department, or commission claims that such submission contains a trade secret, such person may file with the office or department a notice of trade secret as provided in this section.

§ 624.4213(1), Fla. Stat.

B.

We review a trial court's determination of whether specific information is a trade secret for competent substantial evidence. See Sepro Corp. v. Dep't Envtl. Prot., 839 So. 2d 781 (Fla. 1st DCA 2003) (holding that the trial court's finding that documents at issue contained trade secrets "necessarily rests on factual

5

determinations that are assailable on appeal only if unsupported by competent, substantial evidence"). Here, the evidence put forth in the trial court showed State Farm's QUASR data to be a trade secret as defined by Florida law. As to the central issue here—whether State Farm demonstrated that its data possessed independent economic value to others—the testimony of multiple witnesses supported State Farm's case. A State Farm executive testified, for instance, that a competitor could use the data "to see where we're actively growing. And then go someplace else deriving economic advantage by not having to invest marketing money where they know they can't advance." Another State Farm witness testified that a competitor appeared to be using its QUASR data, which wasn't available elsewhere, to supplement their rate making data. And an expert witness confirmed the view that the QUASR data is valuable to competitors. Competent, substantial evidence thus supports the trial court's conclusion that State Farm's QUASR data has independent economic value, or potential value at least, satisfying the statutory definition of a trade secret.[1]

Finally, we affirm the trial court's order denying the Office's laches defense. The evidence indicated that State Farm wrote very limited new business from 2007

---

[1] The Office also argued on appeal that QUASR data is not a "compilation" of information that qualifies as a trade secret. See § 688.002(4), Fla. Stat. But it waived this argument below by conceding in its closing argument that it "agrees that QUASR submissions are [a] compilation of information."

to 2014. And so, once State Farm began writing additional homeowners business again in 2014, new and different business importance (and value to competitors) attached to its QUASR data. Competent, substantial evidence also supports the trial court's conclusion that the Office suffered no prejudice resulting from State Farm's 2014 request for trade secret protection.

## III.

Because the trial court's findings rest on findings supported by competent substantial evidence, we affirm the trial court's order.

AFFIRMED.

JAY, J., CONCURS; WINSOR, J., CONCURS WITH OPINION.

WINSOR, J., concurring.

Our decision turns on the statutory trade-secret definition,[2] the trial court's findings, and the evidence supporting those findings. We would depart from our proper role as judges if we considered more. We cannot be swayed, for example, by

---

[2] As the majority opinion explains, Florida statutes actually include multiple trade-secret definitions. Whether there is some category of data that meets one definition but not another, that is not an issue here. The Office framed its appeal around section 688.002(4)'s definition, and the parties stipulated as to the factors State Farm needed to prove to establish its data was entitled to trade-secret protection.

arguments that the trial court's order will harm consumers, undermine transparency, or increase the Office's administrative burdens. The Office and its supporting amici have expressed concerns on these points, but those concerns cannot help us decide what we are supposed to decide: whether State Farm proved that its data meets the statutory trade-secret definition.

The Legislature weighed the competing public policy interests at issue, the Legislature chose to exempt trade secrets from the public-records law, and the Legislature established the statutory trade-secret definition.[3] State Farm presented evidence—including expert evidence—that its data met the Legislature's definition, and the trial court found that State Farm met its burden. The trial court's findings are supported by competent, substantial evidence, and so our job is to affirm. I therefore join the majority opinion.

---

[3] The constitution guarantees broad access to public records, but it also gives the Legislature limited authority to establish exemptions. *See* Art. I, § 24, Fla. Const. The Office has not challenged the Legislature's authority to exempt trade secrets.